JOHN HARVEY THOMPSON, TRUSTEE, ETC., *v.* FIRST NATIONAL BANK OF JACKSON.

1. BANKRUPTCY. *Trustee. Suits by. Fraudulent conveyance.*

   A trustee in bankruptcy, as the representative of the creditors of the estate, may maintain a suit in equity to set aside fraudulent deeds made by the bankrupt, and subject the property conveyed to his debts.

2. SAME. *Partnership. Dissolution. Consent of creditors.*

   Where, on the dissolution of a partnership, the retiring partner and all the creditors consenting thereto, the title to firm property was transferred to the partner who was to continue the business, and three months thereafter the continuing partner made disposition thereof and was adjudged a bankrupt, the right of his trustee in bankruptcy to sue for the property so disposed of by him cannot be defeated on the claim that the property was partnership property.

3. SAME. *Mere preference. Bankrupt act of 1898.*

   Under the bankrupt act of 1898, sec. 60, subd. "a," of which defines a preference within the contemplation of the law as a transfer of any of the bankrupt's property, the effect of which will be to enable any creditor to obtain a greater percentage of his debt than other creditors of the same class, and sec. 3 of the same, which provides that a transfer by a person, while insolvent, of any portion of his property with intent to prefer a creditor over other creditors, shall be an act of bankruptcy, a mere preference does not amount to an act of bankruptcy, there must be also an intent to prefer.

4. SAME. *Trustee's suit. Recovery of property. Necessary proof. Defendant's knowledge.*

   Under Bankr. Act, July 1, 1898, sec. 57, subd. "g," providing that the claims of creditors who have received preferences shall

not be allowed unless the creditors surrender their preferences, and section 60, subd. "b," declaring that if a bankrupt has given a preference within four months, etc., and the person receiving it shall have reasonable cause to believe that it was intended to give a preference, the trustee may recover the property on proof that the transfer was intended as a preference by the bankrupt, and also that the receiving creditor had reasonable cause to believe that it was so intended.

5. SAME. *Sufficiency of pleading.*

Where the bill by a trustee in bankruptcy to recover property transferred by the bankrupt alleged that the conveyance was made for the purpose of preferring the transferee, and that the transferee had knowledge of all the facts at the time of the preference, it stated a cause of action against the transferee.

6. SAME. *Demurrer erroneously sustained. No affirmance on facts.*

Where, in a suit by a trustee in bankruptcy to set aside a transfer of property made by the bankrupt, a demurrer was erroneously sustained to the bill and the same dismissed after evidence had been taken, the court on appeal will not affirm the judgment on the theory that the decision was correct, although made on the wrong grounds, there having been no decision on the evidence, but only on the pleadings.

FROM the chancery court of, first district, Hinds county.

HON. HENRY C. CONN, Chancellor.

Thompson, appellant, was complainant and the First National Bank, appellee, was defendant in the court below. From a decree sustaining a demurrer to the bill of complaint as amended the complainant appealed to the supreme court. The opinion of the court fully states the facts.

*Watkins & Easterling,* and *Brame & Brame,* for appellant.

Was the property which Barman transferred to McApine & Levy, by which transfer the First National Bank received a preference, partnership property, or was it the property of Barman?

When Suttle, as shown under the allegations of the bill, sold out to Barman, he disposed of his entire interest in the assets

of the partnership, both legal and equitable; and Barman owned the same in fee simple free from any and all claims of Suttle; and when Barman sold said property, it was his property, not the property of Barman & Suttle. Part of it was the property which the firm of Barman & Suttle had owned, but at the date of the alleged preferential transfer, the title to the property was in Barman in fee simple; and it was not partnership property, but was individual property of Barman; and therefore the trustee in this case is not endeavoring to administer upon the estate of the partnership, but is endeavoring to recover from a preferred creditor property which Barman transferred to that creditor. Collier on Bankruptcy (3d ed.), 70. *In re Walter P. Long, et al.,* 7 Benedict (District Court Reports), 149; *In re Collier-Taylor & Company,* 12 National Bankruptcy Register, 266; *In re Wm. Downing,* 33 National Bankruptcy Register, 748; *Robb v. Mudge,* 14 Gray, 534; *Amsink v. Bean,* 22 Wall., 393.

Counsel for appellee argue that the First National Bank was a partnership creditor, that at the dissolution of the firm of Barman & Suttle it had a lien on the partnership assets for the satisfaction of its debt.

If there is anything which the courts of this country have established beyond any question of doubt, it is that partnership creditors have no lien. The courts of this state and of other states, with rare exceptions, hold that the doctrine of the lien of partnership creditors is merely what the courts call a rule of administration, that is to say, when the partners themselves have made no disposition of the partnership assets, or if they have made a fraudulent disposition of the partnership assets, and administration of the assets are before a court of chancery, then a court of chancery will pay first the partnership creditors out of the partnership assets and *vice versa.* 22 Am. & Eng. Ency. Law (2d ed.), 192; *Schmidlapp v. Currie,* 55 Miss., 597; *Roach v. Brannon,* 57 Miss., 490; *Hanover National Bank v. Klein,* 64 Miss., 149.

The bill shows that Barman & Suttle were solvent; that they both desired to dissolve the partnership, they both desired and did impress upon the property the character of individual property, and that Suttle relinquished all his claim to said property, both legal and equitable, and in doing so, they were exercising a right of disposition which is inherent in the members of all partnerships; and it furthermore appears that this dissolution was not made for the purpose of defrauding partnership creditors, but the evident purpose of it and intention of the dissolution was, that Barman could take the assets and pay off the partnership creditors, which he had a perfect right to do. No creditor of Barman & Suttle could object to this arrangement; and if they had objected, the time to have objected was then, not to stand there and see Barman contract individual debts and make additions to the property on his individual credit.

Counsel for appellee say this is not a case of equitable jurisdiction. The bill shows that the First National Bank got a part of the property, we do not know how much. We know that it is liable to this appellant for the property received by it. We ask for discovery and we ask for an accounting in order that we may ascertain what part of the property it received.

It is no defense to a suit brought by a trustee of Barman to say that some other party who may be liable for these debts is not shown in the face of the bill to be insolvent.

*Green & Green,* for appellee.

The rights of firm creditors cannot be changed by any agreement made by the partner. *Norman* v. *Jackson Fertilizer Co.,* 79 Miss., 753; *Swan* v. *Smith,* 57 Miss., 553; *Ranson* v. *Taylor,* 30 Ohio St., 389; *Hardware Co.* v. *Wells,* 90 Tex., 110.

The trustee of an individual partner has no right to avoid firm transactions, even though they may be preferences as to firm creditors. *In re Sanderlin,* 109 Fed., 859; *McNair* v. *McIntire,* 113 Fed.; *Amsinck* v. *Bean,* 22 Wall., 404; *In re*

*Rodding,* 6 Biss., 377; *In re Holbrook,* 2 Low; *In re Shephard,* 3 Ben., 352; *In re Mercur,* 116 Fed., 655; *Telegraph Co.* v. *Institution,* 116 Fed., 662.

A partnership is an entity, the creditors of which have the right to the assets which cannot be affected by the act of the individual partners. *Bank* v. *Durfey,* 72 Miss., 975; *Bank* v. *Fargason,* 79 Miss., 64; *George* v. *Lumber Co.,* 33 So. Rep., 497. In equity partnership creditors have a lien. Bankrupt Act 1898, sec. 5, A. F.; *In re Mosier,* 112 Fed., 139. When property is appropriated to the discharge of a valid lien thereon no preference is created as against the unsecured creditors. *Hallock* v. *Tritck,* 13 N. B. R., 293; *Sawyer* v. *Turpin,* 17 N. B. R., 271.

Preferential transfers of firm property can only be avoided by the firm trustee (Collier on Bankruptcy, 308), and a dissolution of a firm does not affect a creditor's rights. Bankrupt Act 1898, sec. 5A; *In re Hirsch,* 97 Fed., 573; *In re Meyer,* 98 Fed., 976. There is no averment that the firm and J. S. Suttle were insolvent, and to transform a transfer into a preference this is a condition precedent. *Vacaro* v. *Bank,* 103 Fed., 441; *In re Blair,* 99 Fed., 76; *In re Meyer,* 98 Fed., 976.

Barman is not entitled to a discharge from the firm debts. *In re Meyers,* 97 Fed., 411; s.c., 97 Fed., 757; *In re Russell,* 97 Fed., 32; *In re Meyers,* 98 Fed., 976; *In re Hale* 107 Fed., 432.

Upon the whole case and all the proof taken, the judgment is clearly correct, and should be affirmed, although the demurrer to the second amended bill was improperly sustained. *Railroad Co.* v. *Adams,* 32 So. Rep., 944.

Argued orally by *W. H. Watkins* and *L. Brame,* for appellant, and by *Marcellus Green,* and *Garner W. Green,* for appellee.

MAYES, Special Judge, delivered the opinion of the court.*

This case comes to this court by appeal from a decree sustaining a demurrer to a second amended bill and dismissing the same.

The said amended bill averred in substance as follows: That Barman & Suttle were partners, carrying on a stable business; that Suttle was only a nominal partner; that on July 1, 1901, the firm owed $5,500, including a large debt to the First National Bank; that the bank was well acquainted with every detail of the business of the firm; that about such day Suttle retired from the partnership, disposing of his entire interest in the assets to Barman, who assumed all the outstanding indebtedness of the firm, including the debt owing to the First National Bank; that the firm's creditors acquiesced in this arrangement; that Barman continued the business in his own name until about the 1st of October, in the usual course of business, acquiring property and disposing of the same; that about the 1st of October, being then insolvent and owing about $5,500, including the old firm liabilities and other debts incurred by himself after the dissolution, and being pressed by the bank and other creditors, and his stock then being worth about $3,000, he sold the entire stock to McAlpin & Rutherford, who undertook to pay, and did pay, the debt of about $2,200 then due to the bank, and a few other small debts, leaving unpaid about $3,000 of indebtedness, mostly due to the creditors of the former firm of Barman & Suttle; that when this transfer was made the bank well knew that Barman was insolvent, and knew that such transfer operated as a preference in its favor over the other creditors of Barman, successor to Barman & Suttle, and that in making this collection it was obtaining a preference over the other creditors of Barman and of the former firm; that on December 24, 1901, a petition for in-

---

* Judge Calhoon recused himself in this case, and Edward Mayes, Esq., a member of the supreme court bar, was appointed special judge and presided in his place.

voluntary bankruptcy was filed against Barman, on which such proceedings were had that he was duly adjudicated, and complainant was duly elected and qualified as trustee in bankruptcy of Barman's estate; that such transfer by Barman was made for the purpose of preferring the bank over the remaining creditors, and that the bank "was in knowledge of all the facts at the time of said preference." The amended bill on such statements prayed that the bank be required to repay the money received by it.

This bill was demurred to for want of equity; but that point is disposed of by *Wall* v. *Cox,* 101 Fed., 403 (41 C. C. A., 408), in which case it is held that such a bill does lie, and we accede to that view.

It is contended by the appellee that the trustee cannot maintain this action, because, as is claimed, the assets were partnership assets, while the complainant is trustee of only the individual estate of Barman. Various cases are cited to support this proposition, especially *In re Sanderlin* (D. C.), 109 Fed., 857. We do not think these cases applicable. In all of them the transfers declared to be not assailable by the trustee were transfers of firm property made by the firm. But the instant case is not in that class; for here the firm had been dissolved about three months before the transfer complained of was made, and by consent of the retiring partner the entire title and ownership of the property had been for so long a time vested in Barman, in which the creditors acquiesced, and the transfer was made by Barman, solely, as of his individual property. We hold that the trustee can recover as the individual trustee, if other conditions to recovery are met. The case of *Amsinck* v. *Bean,* 22 Wall., 404 (22 L. ed., 801), contains a clear intimation that such is the law where a dissolution occurs, and the title is vested in the bankrupted partner, prior to the filing of the petition.

Does the bill state a cause of action? is the remaining question; and this question requires us to consider what averments

are needed under the bankruptcy law, and what averments are made in the bill.  The bankrupt law, for some purposes, clearly distinguishes between a transfer of property, on the one hand, the effect of which is to enable a creditor to obtain a greater percentage of his debt than other creditors of the same class, and a transfer, on the other hand, made and received with the intent to give and receive such a preference.  Section 60, subd. "a," defines a preference, within contemplation of the bankrupt law, as being "a transfer of any of his property, and the effect of the enforcement of such  .  .  .  transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."  Act July 1, 1898 (c. 541, 30 Stat., 562, U. S. Comp. St., 1901, p. 3445).  Thus the question of whether a given transfer is or is not a preference is brought to the test of its effect, and not to the test of its intent.  But the law does not make illegal every preference so defined, even when made within four months. For section 3, in defining acts of bankruptcy, provides that they "shall consist of his having  .  .  .  transferred, while insolvent, any portion of his property to one or more of his creditors, with intent to prefer such creditors over his other creditors" (30 Stat., 546 [U. S. Comp. St., 1901, p. 3422]), and so the intent is made a necessary element in the act of bankruptcy. So, also, sec. 57, subd. "g," provides that "the claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences" (30 Stat. 560 [U. S. Comp. St., 1901, p. 3443]); while sec. 60, subd. "b," declares that "if a bankrupt shall have given a preference within four months, etc., and the person receiving it  .  .  . shall have reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from said person." Thus the provision of the statute seems to be that a mere preference in effect or result shall not be an act of bankruptcy, but there must be also an intent to prefer; and also that, while the

bare fact of a preference in effect received within the four months shall bar a creditor receiving the same from proving any balance due, and participating with the other creditors in dividends, unless he shall surrender what he got, yet still he is entitled to his election; and before a trustee can recover a preference payment received he must allege and prove both that the payment was intended by the debtor as a preference, and also that the receiving creditor had reasonable cause to believe that it was so intended. Speaking of the foregoing provisions, it was said in *Columbus Electric Co.* v. *Worden,* 99 Fed., 400 (39 C. C. A., 582), that: "It is apparent from these provisions of the law that not all preferences by an insolvent debtor may be avoided. The congress has seen proper to provide that the trustee in bankruptcy may recover preferences in the event only that the creditor had reasonable cause to believe that a preference was intended." In *Pirie* v. *Chicago Title & Trust Co.,* 182 U. S., 438 (21 Sup Ct., 906; 45 L. ed., 1171), the condition of the law is clearly so stated. The court said: "But if the person receiving the preference did not have cause to believe it was intended, what then? It follows that, the condition beng absent, its effect will be absent. In other words, he may keep the property transferred to him, whether it be a complete or partial discharge of his debt." Now, nearly all of the averments of the amended bill are directed to the effect of the transfer assailed, as constituting a preference. The only statement which can be considered as charging an unlawful intent and knowledge is the following: "Said conveyance was made for the purpose of preferring the First National Bank, . . . [and] the said First National Bank . . . received a preference of $2,200 over the other creditors, and was in knowledge of all the facts at the time of said preference." Although this statement of the bill is not in the statutory terms, we think it is sufficient to present the necessary issues for decision. Construing that language to include a charge that the transfer complained of was made by Barman

with intent to give the bank a preference over other creditors of the same class, and that the bank had reasonable cause to believe it was given with such intent, we hold that the amended bill did state a cause of action, and was not demurrable.

The claim that the judgment below should be affirmed under the rule applied in *Railroad Co.* v. *Adams,* 81 Miss., 90 (32 So. Rep., 937), is not sound. In that case the chancellor had tried the case on final hearing on the proofs, and we held that, although his decision may have been made on the wrong grounds, yet, looking to all the proofs, his decree was correct, and we affirmed it; but here there has never been any decision on the proofs, but only a judgment about the sufficiency of the pleading.

*Cause reversed, and remanded with instructions to the court below to proceed with the same in accordance with this opinion.*