GWIN *v.* FOUNTAIN *et al.*

(Division B.   Jan. 20, 1930.)

[126 So. 18.   No. 28082.]

622

(Feb. 23, 1931.)

[132 So. 559. No. 28082.]

For former opinion, see 126 So. 18.

Means Johnston, of Greenwood, S. Rosenthal, of Jackson, and Cutrer & Smith and G. E. Williams, all of Clarksdale, for appellant.

Cutrer & Smith and G. E. Williams, all of Clarksdale, and Means Johnston, of Greenwood, for appellant.

Gàrdner, **O**dom & **G**ardner, of Greenwood, for appellees.

Argued orally by **G. E. Williams** and **Means Johnston,** for appellant, and by **H. T. Odom** and **A. F. Gardner,** for appellees.

**Anderson, J.,** delivered the opinion of the court.

This is an appeal from the chancery court of Leflore county from a decree setting aside and vacating a former decree of that court allowing appellant an attorney's fee of twenty-five thousand dollars against the estate of W. T. Fountain, deceased, in the matter of the administration of that estate, and awarding a recovery against appellant in favor of appellees in the sum of forty-two thousand six hundred thirty-eight dollars and fifty-one cents. From that decree appellant prosecutes this appeal.

Appellant assigns and argues several grounds for reversal of the decree. The conclusion we have reached renders it necessary to decide only the following: Whether the court erred in setting aside its former decree allowing appellant an attorney's fee of twenty-five thousand dollars for services rendered by him in the administration of the estate of W. T. Fountain, Sr.; whether the court erred in consolidating the circuit court case with the chancery court case, and trying both as one cause; whether the sworn, itemized account against appellant in favor of W. T. Fountain, Sr., was properly admitted in evidence, and appellant's liability therefor established; whether the court erred in excluding the evidence offered by appellant for the purpose of showing the value of his legal services to the estate of W. T. Fountain, Sr., during the administration of both executors. We will consider and decide these questions in the order stated, and in doing so will set out the material facts out of which each question arises.

The court held that the decree allowing appellant an attorney's fee of twenty-five thousand dollars for his services rendered the estate of W. T. Fountain, Sr., during the executorship of C. E. Wright, was void, because violative of section 2131, Code of 1906 (section 1875, Hemingway's Code of 1927), and the principles declared in Clopton v. Gholson, 53 Miss. 466; Norton v. Phelps, 54 Miss. 467; Hines v. Potts, 56 Miss. 346; Parham v. Stith, 56 Miss. 465; Stern v. Hampton, 73 Miss. 555, 19 So. 300; and Howell v. Myer, 105 Miss. 771, 63 So. 233. The statute provides as follows:

"In annual and final settlements, the executor or administrator shall be entitled to credit for such reasonable sums as he may have paid for the services of an attorney in the management or in behalf of the estate if the court be of opinion that the services were proper and rendered in good faith."

The court held that appellant's fee for his services during the executorship of Wright was a personal liability of the executor, and therefore the decree rendered after the death of the executor, Wright, fixing the fee and making it a charge upon the estate, was void. It was held in the above cases referred to that debts contracted by executors and administrators are binding only as personal obligations, and cannot bind the estate committed to them, except where specially authorized by statute, and that this was true of counsel fees incurred for legal services in the management of the estate.

The statute (section 2131, Code of 1906 [section 1875, Hemingway's Code of 1927]) was passed in 1882. It was merely declaratory of the common law. Clopton v. Gholson, supra. Among other things, it was held in that case that, while a trustee has a lien on the trust estate in his hands for costs and expenses legally incurred by him in its administration, this privilege does not extend to agents employed by him—that such agents must look alone to the trustee for reimbursement; that, while the trustee who had paid or become responsible to persons legitimately employed by him in the business of the estate may retain the assets for his own reimbursement, yet, if he does not do so, the parties employed by him are ordinarily powerless to assert any claim against the estate. The court said:

"If the trust estate was liable to be attacked and impleaded by every person who had dealt with the trustee, and forced to litigate with them in the nature, value and beneficial character to the estate of the services alleged by them to have been rendered, it would be involved in endless complications, and be perhaps swallowed up or seriously injured by the accumulations of costs. The law, therefore, compels such persons to look to the trustee with whom they dealt, and against whom alone they have a legal demand. If their claim is recognized or enforced

against him, he presents it to the proper tribunal, and with him the beneficiaries of the estate will litigate the question of the propriety of its allowance against themselves.''

That case involved a claim by attorneys for fees for their services rendered the executors in the administration of the estate in their hands. When the claim was presented to the court for allowance, both of the executors had died, and an administrator with the will annexed had been appointed. The court held that the estate was not liable for the attorneys' fees, but that it was a liability of the executors.

The question is, Do these principles apply to the facts of this case? And this question turns upon the proper construction of the will of W. T. Fountain, Sr., who died on October 26, 1919, leaving a last will and testament, which was probated on November 6, 1919. His sole heirs and legatees and devisees under his will were the appellees in this case, his wife and three sons, Ella Whitehead Fountain, and W. M. Fountain, N. W. Fountain and W. T. Fountain, Jr. When W. T. Fountain, Sr., died, his son, W. M. Fountain, was an adult, and the other two sons were minors. The estate of the decedent consisted almost exclusively of a large mercantile business in the city of Greenwood—a department store—the value of which was approximately five hundred thousand dollars. The only other property he owned was a house and lot, formerly his residence, of the value of something like five thousand dollars, which was willed to his wife. The mercantile business was willed to the wife and the three sons, share and share alike. C. E. Wright was named in the will as executor and trustee. Two outstanding provisions of the will were that the mercantile business should continue uninterrupted; and that the executor, C. E. Wright, should have the same power and authority to manage and carry on the business as the testator had in his lifetime.

In paragraph 4 of the will it was provided: "That the business shall be carried on in the manner in which it has been heretofore conducted by me, and I hereby authorize and empower my said executor so to do;" and it was provided in paragraph 5 that the executor "shall have plenary power and authority to carry on my said business and to do any and all things which in his discretion may be necessary or proper for that purpose (which in his discretion shall be full and final) which will be calculated best to promote the interests of the business;" and that the executor, according to his judgment, should have full power and authority to incur debts to any amount, and for any purpose, in connection with the conduct, continuance, and growth of the mercantile business; and to that end "my said executor may sell, pledge or otherwise deal with or dispose of, any or all of my property, real and personal" (except the former homestead devised to his wife) "in such manner as he, in his discretion, may think proper."

In paragraph 7 of the will, the executor was authorized, if, in his discretion, he thought it would be conducive to the interests of the mercantile business to organize a corporation for the purpose of purchasing and owning the business, with the authority in him to transfer the business and all its assets to the corporation so organized, the stock in such corporation to belong to the testator's wife and children; but that during the executorship of C. E. Wright the stock should be controlled and voted by the executor and such other person or persons as he might name for that purpose; but that Wright, the executor, should at all times have control, and direct the policy of the corporation, "and select the personnel of its management;" that during the executorship of Wright the shares of stock belonging to his wife and children should not be pledged or disposed of by them without the consent of Wright; that

the stock in the corporation so organized should be issued to the executor, Wright, as trustee for the testator's wife and children. (A corporation was accordingly organized.) Paragraph 8 of the will provided that C. E. Wright, the executor, should have the authority to resign his executorship, and turn the mercantile business over to the testator's sons, or some one or more of them, when the executor should, in his judgment, decide that such son or sons were capable of properly conducting the business; and, when this was done, such son or sons taking the place of Wright should have all the powers conferred by the will on the latter. But it was further expressly provided in that paragraph that Wright should continue as executor and trustee under the will, "until such time as he, in his discretion, which shall be full and final," should determine that one or more of the sons were capable of taking his place.

In paragraph 9 it was provided that, if at any time the executor, Wright, should for any reason become unable or unwilling to perform the duties of executor and trustee under the will, he should have the power and the authority, with the approval of the chancellor of the chancery court district in which Leflore county is situated, to appoint his successor as executor and trustee; and "at any time thereafter the said C. E. Wright may remove his successor so appointed, and appoint his successor in the same manner; and may continue to exercise the same power of removal and appointment as often as he may desire. The said C. E. Wright shall have power also to designate by his will, or other written instrument which may be left by him at his death, his successor as executor and trustee hereunder, which shall become effective as an appointment whenever approved by said chancellor." And any executor or trustee so appointed by Wright should have all the power and authority in the management of the estate conferred by the will on

Wright. Paragraph 10 provided that the executor and trustee under the will should have the power to determine what part of the income or corpus of the estate, if any, should be devoted to the maintenance and support of the wife and children. Paragraph 13 provided that the executor and trustee should not be liable to the legatees and devisees under the will ''for any error of judgment or loss in good faith incurred or suffered from or during the continuance or operation of said mercantile business, or otherwise in connection with the control of my estate.''

It will be seen from the will that two of the fundamental purposes of the testator were to confer upon the executor and trustee absolute, full, and final discretion in the management, control, and disposition of the estate in the same manner and to the same extent that the testator would have had, if living, and to relieve the executor from any and all personal liability on account thereof, except that incurred on account of bad faith on his part.

Now, do the principles laid down in the Clopton case, and other cases along that line, apply to an estate being administered under a will with such broad and comprehensive powers vested in the executor and trustee as are conferred by this will? We think not. The will gave the executor and trustee full power, without a precedent order of the chancery court, or a subsequent approving order, to employ all the persons necessary to properly conduct and manage the trust estate, in order to carry out the purposes of the testator; and this power included the employment of competent counsel to advise and aid the executor and trustee in the execution of his trust; and in the grant of these powers the will relieved the executor and trustee from any personal liability, except for bad faith. By the will the obligations thus incurred were made charges against the trust estate, and not personal charges against the executor and trustee.

So we conclude that the powers conferred by this will on the executor and trustee necessarily took the administration of this estate out of the operation of the statute, and of the principles of the Clopton case, and other cases of like kind, relied on by appellees. Surely a testator could expressly provide in his will that his executor should have the power to employ counsel to assist him in the administration of the trust estate; and that a reasonable fee for such services should be a charge against the trust estate, and not a personal liability of the executor. That is exactly what the will here does —if not expressly, by necessary implication.

It follows from these views that the action of the court in setting aside and vacating the decree allowing appellant the twenty-five thousand dollar fee out of the trust estate, upon the ground that the fee could not be made a charge upon the trust estate, but was a personal liability of the executor and trustee, was erroneous.

However, we are of opinion that the action of the court in setting aside and vacating the decree must stand, because the record in this case shows that there was another ground sufficient to support the action of the court in that respect. Appellees charge in their bill that the decree was void because it was procured by fraud on the part of the appellant. At the time of the allowance of the fee, appellant was attorney for C. E. Wright, the executor and trustee under the will of W. T. Fountain, Sr., in his lifetime. He was the attorney of W. M. Fountain, who succeeded C. E. Wright as executor and trustee of the will of W. T. Fountain, Sr. Appellant was the legal adviser of the appellees, the legatees and devisees under the will of W. T. Fountain, Sr.; and, in addition, there existed between appellant and his family, on the one hand, and the appellees, on the other, very intimate social relations. The decree allowing the attorney's fee to appellant was rendered in 1922. The evidence on be-

half of appellees tended to show that they did not know of the existence of the decree until some time in 1928.

The relation of attorney and client is one of special trust and confidence. The law requires that all dealings between them shall be characterized by the utmost fairness and good faith on the part of the attorney. So strict is this rule that dealings between an attorney and his client are held as against the attorney to be prima facie fraudulent, and the attorney, in order to sustain such a transaction which is advantageous to him, has the burden of showing, not only that he used no undue influence, but that he gave his client all the information and advice which it would have been his duty to give if he, himself, had not been interested. The relation of attorney and client is regarded in much the same light as that of guardian and ward. Equity will relieve a client from a hard bargain or from any undue advantage secured over him by his attorney. The situation of an attorney with reference to his client puts it in his power to avail himself, not only of the necessities of his client, but of his liberality and credulity. The law not only carefully watches over all transactions between attorney and client, to see that no advantage is taken of the client by his attorney, but it often goes further, and holds such transactions void which between other persons would be held valid. It is a well-settled equitable principle that any one acting in a fiduciary capacity shall not make use of that relation to benefit his own personal interests, "except with the full knowledge and consent of the other person;" and, "when a fiduciary relation is established between parties, courts of equity scrutinize very closely any transaction between the parties by which the dominant party secures any profit or advantage at the expense of the person under his influence. All transactions between parties in this relation are presumptively fraudulent and void." And these principles apply to probate

proceedings involving the administration of estates and guardianships, and similar trust relations. And, when such a relation exists, actual fraud, involving moral turpitude on the part of the attorney, is not an indispensable element of fraud. The facts and circumstances growing out of the relation may be such that the advantage gotten by the attorney constitutes a fraud in law on the rights of his client, regardless of the good faith of the attorney. 6 C. J. 686-688 and notes; 3 Freeman on Judgments, section 1235; 25 C. J. 1120.

In 1922 the executors of Wright filed a final report of Wright's administration of the estate. The petition of the executor accompanying the report set out, among other things, that appellant had been Wright's counsel throughout the latter's executorship and that he rendered necessary and valuable services in the administration of the estate; and prayed that reasonable compensation be fixed by the court for such services; and that W. M. Fountain, who succeeded Wright as executor, and had received the whole estate, be authorized and directed to pay appellant the fee so fixed by the court, out of the funds of the estate. On the filing of the report and petition, summons was issued by the clerk of the court for appellees, including W. M. Fountain in his capacity as executor, commanding them to appear and show cause, if any they had, why the final report should not be ratified and allowed by the court. There was no mention made in the petition as to the amount of fee appellant would claim for his services, nor was there any recital in this summons issued for appellees, giving them notice that Wright's executors would ask the court to make an order allowing appellant an attorney's fee for his services to the estate. W. M. Fountain, as executor, waives service of the summons; the summons was served on the other appellees. W. M. Fountain testified that he asked appellant whether or not it was necessary for

any of the appellees to appear in court in response to the summons, and appellee replied that it was not.

On the hearing of the final report of Wright's executors, the court rendered a decree ratifying and allowing the report, and fixing appellant's fee for his services at twenty-five thousand dollars, which was made a charge upon the estate, and which W. M. Fountain, as executor, was directed and ordered to pay out of the estate in his hands.

An employee in appellant's law office testified that on the day after the rendition of the decree she was directed by appellant to send to W. M. Fountain, executor, a copy of the final report, the petition accompanying the same, and a copy of the decree, which she did. W. M. Fountain testified, as stated above, that he never knew of the provision in the decree allowing the attorney's fee, until some time in 1928. There was other evidence offered by both appellant and appellees, bearing on the question of whether appellees had notice that Wright's executors, in their final report, had asked the court to allow appellant a fee for his services to the estate. We deem it unnecessary to set out this evidence. It is sufficient to say we are of opinion that, under the evidence in the case, including that offered by appellant, and excluded by the court, appellant's trust relations to appellees and to the estate of W. T. Fountain, Sr., were of such a character as to render the decree for allowance of the attorney's fee fraudulent in law, notwithstanding it falls short of showing that appellant intended, in procuring the decree, to do the appellees any moral wrong. Appellant's relations to the estate and to appellees were such that he was called upon to say to appellees, in some form, substantially the following: "Until now our interests have been the same all through the administration of this estate—there has been no conflict. But now, so far as the allowance out of the estate of a fee for my services dur-

ing Wright's administration is concerned, we have come to the parting of the ways. Our interests are adverse. I propose to ask the court to allow me a fee for such services''—stating to them approximately the amount he would claim—''I give you this notice so that you may have an opportunity, if you desire, to employ other counsel to represent you in this matter.'' In other words, nothing but actual notice to appellees was sufficient to put them on guard, that they might protect their interests.

Appellee's bill to set aside the decree allowing appellant the twenty-five thousand dollar attorney's fee was filed in the chancery court, and at about the same time W. T. Fountain, Incorporated, brought an action against appellant in the circuit court of Leflore county on a sworn, itemized account, for the recovery of the sum of thirty-five thousand eight hundred three dollars and sixty-four cents, with interest. This account was charged on the books of W. T. Fountain, Incorporated, to appellant's wife. It purports to represent goods, wares, and merchandise sold by W. T. Fountain, Incorporated, covering the period from January 1, 1923, up to a short time before the action was brought. The declaration charged that the indebtedness evidenced by this account was that of appellant, and not of his wife; that it represented goods, wares, and merchandise sold to appellant and his wife and family, on his credit, and not on the credit of his wife.

On the application of appellant, the circuit court cause was transferred by that court to the chancery court, where, on motion of appellees, the two causes were consolidated and tried together. The appellant assigns and argues as error the action of the court in consolidating the two causes.

We are of opinion that the court committed no error in requiring the causes to be consolidated and tried as

one cause. The administration of the estate of W. T. Fountain, Sr., the services of appellant as attorney for the estate during the executorship of Wright, his services as attorney during the executorship of W. M. Fountain, who succeeded Wright, and the purchase by appellant and the members of his family of the goods, wares, and merchandise represented by the account which was the basis of the action in the circuit court case, were all so intimately connected and interwoven that it was eminently proper that the two causes be consolidated and tried as one. To a very large extent, the material evidence in both causes was necessarily the same. Furthermore, the evidence indicates strongly that both appellant and appellees intended that the account sued on and appellant's claim for services as attorney for the estate during both executorships should offset each other so far as they would. Where there are several actions between the same parties, the subject-matter being the same in each, requiring substantially the same general character of evidence in each, the court, to save time and expense, is authorized to consolidate the actions, and try them as one cause; and whether such a consolidation shall take place rests in the sound discretion of the court, which discretion will not be interfered with on appeal, unless it is abused. Planters' Oil Mill v. Yazoo & M. V. R. Co., 153 Miss. 713, 121 So. 138; Columbus & G. R. Co. v. Mississippi Clinic, 152 Miss. 869, 120 So. 187.

Was the sworn, itemized account against appellant in favor of W. T. Fountain, Incorporated, which was the basis of the circuit court cause, properly admitted in evidence, and appellant's liability therefor established by the evidence, as held by the court? Over the appellant's objection, the court admitted in evidence the account, which as stated, was charged on the books of W. F. Fountain, Incorporated, to appellant's wife, and not to appellant. Appellant's contention is that the affidavit to

the account did not comply with section 1978, Code of 1906 (section 1710, Hemingway's Code of 1927). That part of the affidavit to the account in question is in this language: "Affiant says further that the foregoing account in favor of W. T. Fountain, Incorporated, against S. L. Gwin, and charged to Mrs. S. L. Gwin, to which this affidavit is affixed, is true and correct as therein stated, and is now past due and unpaid and owing by the said S. L. Gwin to the said W. T. Fountain, Incorporated." The statute provides as follows:

"A person desiring to institute suit upon an open account in his favor, may make affidavit to the correctness of such account, and that it is due from the party against whom it is charged; and in any suit thereon such affidavit attached to the account shall entitle the plaintiff to judgment at the trial term of the suit, unless the defendant make affidavit and file with his plea that the account is not correct, particularizing wherein it is not correct, in which event the affidavit to the account shall entitle the plaintiff to judgment only for such part of the account as the defendant by his affidavit shall not deny to be due; but this shall not apply to accounts against decedents and suits against executors or administrators. A defendant desiring to use an open account as a set-off shall be entitled to the benefit of this section."

The object of the statute was to dispense with proof of the correctness of the items of the account when sworn to, unless the defendant should deny their correctness by means of a counter-affidavit. The statute prescribes a rule of evidence. Where the account sued on is properly sworn to, proof of the correctness of the items of the account is dispensed with, unless there is a counter affidavit by the defendant, denying the genuineness of the items in whole or in part. Reinhardt v. Carter, 49 Miss. 315; Bower v. Henshaw, 53 Miss. 345; 1 C. J. 666, par. 197. The statute does not alter the law of pleading, and

the defendant, without a counter affidavit, is entitled to contest his liability, notwithstanding the account be sworn to. Reinhardt v. Carter, supra; Aaron v. Podesta, 60 Miss. 82; Gulf & S. I. R. Co. v. Kelly, 131 Miss. 133, 95 So. 931. We think the statute was substantially complied with, and that the evidence in the case was ample to justify the court in finding that appellant was liable for the account.

We do not pass on the question of whether the court erred in refusing to allow appellant to file a counter affidavit, denying the items of the account in whole or in part, because, under the view we take, the decree appealed from is to be reversed in part, and the cause remanded for trial of issues later to be pointed out in this opinion.

Appellant made his answer a cross-bill, setting out the services he had rendered the estate of W. T. Fountain, Sr., during both executorships; and prayed the court, in the event the court should hold that the decree allowing appellant the twenty-five thousand dollar attorney's fee to be void, that appellant be allowed a reasonable fee for his services to the estate. On the trial the court, being of the view that the decree was void on its face for the reasons already stated, for the same reasons excluded all evidence offered by appellant to show the value of his services as attorney for both executors. This was error, for the reasons already stated in this opinion.

Appellant assigns and argues as error the action of the court in striking from the files his plea of the statute of limitations to the account sued on. We do not pass on this question, in view of the fact that the cause is to be remanded, and another trial is to be had.

The result of the views we have expressed leads to the affirmance of the decree appealed from, insofar as it holds that the decree allowing appellant the attorney's fee of twenty-five thousand dollars was void; and insofar as it holds appellant liable for the correct items of

the sworn account for thirty-five thousand eight hundred three dollars and sixty-four cents and interest thereon.

The decree appealed from is reversed because of the error of the court in excluding the evidence offered by appellant showing the value of his legal services to the estate during the administration of both executors. And this means that the decree, insofar as it allowed appellant an attorney's fee of five thousand nine hundred forty-five dollars and seventy-seven cents for his services during the executorship of W. M. Fountain, is also set aside. But on another trial appellant should be permitted, if he so desires, to plead any appropriate statute of limitations to the itemized, sworn account, and also to file a counter affidavit, denying the genuineness of any part of the items of the account. But he should not be permitted to deny his liability for whatever items of the account are correct and genuine—that is, whatever items of the account were bought by himself or any member of his family, and charged to his wife, and remain unpaid for; for the question of liability was decided against appellant by the trial court on ample evidence.

And on another trial likewise, appellees, if they so desire, should be permitted to plead any appropriate statute of limitations to the claim of appellant for his legal services to the estate during both executorships. And any other subsidiary and pertinent issues to those mentioned are left open for another trial.

The other assignments of error argued raise questions which, in the nature of the case, in all probability will not arise on another trial; and, furthermore, they are questions not of sufficient gravity to call for a discussion by the court.

We find no other substantial errors in the decree than those we have noted.

The costs of this appeal are equally divided between the parties.

Reversed in part and affirmed in part.

ON SUGGESTION OF ERROR.

**Ethridge, P. J.**, delivered the opinion of the court on suggestion of error.

After a protracted consideration of the suggestion of error, we have reached the conclusion that we were in error in holding, in the former opinion (126 So. 18), that the proof offered by the appellant on the question of notice to, and knowledge of, Fountain, as to the amount of the fee claimed, and knowledge of the allowance of the fee at the time it was allowed, and the proof of the reasonableness of the fee so allowed, were insufficient, if believed to be true, to sustain the allowance of the fee in the former decree rendered. The conflict in the evidence should be decided by the chancellor.

We should not have decided that part of the controversy, but should have remanded it to the court below, with directions to admit the evidence and decide the issues of fact. This court is only a court of appellate jurisdiction, and cannot decide issues of fact which have been pretermitted by the court below, or decide issues of fact by considering evidence which was excluded by the lower court in deciding the issues of fact. See Planters' Ins. Co. v. Cramer, 47 Miss. 200; Gray v. Bryson, 87 Miss. 304, 39 So. 694; Thompson v. First Nat. Bank, 84 Miss. 54, 36 So. 65; The Y. &. V. R. R. Co. v. Wallace, 90 Miss. 609, 43 So. 469, 122 Am. St. Rep. 321; Peirce v. Halsell, 90 Miss. 171, 43 So. 83; Edwards v. Kingston Lbr. Co., 92 Miss. 598, 46 So. 69; I. C. R. R. Co. v. Dodd, 105 Miss. 23, 61 So. 743, 49 L. R. A. (N. S.) 565; Edmunds v. Mister, 58 Miss. 765.

The suggestion of error is sustained to the extent indicated in the foregoing.