SANDERS & ALEXANDER, INC. *v.* JONES.

May 10, 1954

No. 39185 64 Adv. S. 30 72 So. 2d 240

*Sams & Jolly,* Columbus, for appellant.

*Sims & Sims,* Columbus, for appellee.

APPELLANT IN REPLY.

ETHRIDGE, J.

Sanders and Alexander, Inc., doing business as Builders Lumber and Supply Company, brought this suit in the Circuit Court of Lowndes County against M. V. Jones on a sworn, open account. The declaration charged that from July 1950 to January 1951, plaintiff sold and delivered to defendant Jones, upon his order, various items of lumber and building materials, for which Jones owed plaintiff, after giving him credit for payments made, the sum of $1,586.15, including interest; that plaintiff had made to defendant certain quotations of prices for building materials, and that in accordance with the estimate submitted by plaintiff, Jones owed $449.39 for price advances on Curtis Millwork, and $276.48 as a charge for deliveries of materials at less than truck load lots, at 18¢ per mile. Attached to the declaration was a sworn account complying with Code of 1942, Section 1754. It set forth three categories of indebtedness of defendant to plaintiff: $449.39 for price advances on Curtis Millwork; $276.48 for less than truck-load deliveries; and the balance of $690.49 for materials delivered, and it itemized each of these three types of debt.

Jones' answer denied liability under any contract with plaintiff. He filed no counter-affidavit, as is required by Code Section 1754, in order that a defendant may contest the correctness of the various items of a sworn account. After both sides had offered testimony, the case was submitted to a jury, which returned a verdict for defendant.

The testimony showed that in 1950, M. V. Jones, appellee, contracted with Dr. J. B. Robertson of Fayette, Alabama, to construct a home for Robertson in that

city. Jones was the general contractor. On May 1, 1950, plaintiff, at Robertson's request, submitted an "estimate" of the cost of millwork materials which plaintiff could furnish for use in the Robertson home, in the amount of $6,506.03. Jones based his successful bid as general contractor for the Robertson job on this estimate of plaintiff and on estimates of other materialmen and laborers. Jones also dealt in lumber, doing business as Kolola Springs Lumber Company, Kolola Springs, Mississippi. The plaintiff's place of business is Meridian, Mississippi.

The trial court should have granted plaintiff its requested peremptory instruction for two of the categories of indebtedness set forth in the sworn open account, namely, price advances on Curtis Millwork and charges for less than truck load deliveries. Plaintiff's account detailed the items of charges making up these two categories of indebtedness, and defendant did not file any counter-affidavit contesting the correctness of those items.

Code Section 1754 provides in part: "A person desiring to institute suit upon an open account in his favor, may make affidavit to the correctness of such account, and that it is due from the party against whom it is charged; and in any suit thereon such affidavit attached to the account shall entitle the plaintiff to judgment at the trial term of the suit, unless the defendant make affidavit and file with his plea that the account is not correct, particularizing wherein it is not correct, in which event the affidavit to the account shall entitle the plaintiff to judgment only for such part of the account as the defendant by his affidavit shall not deny to be due; . . ."

Hence under the statute defendant could not contest the correctness of the items of account. He waived this by failing to file a counter-affidavit. His defense was therefore limited to a denial of liability. But the overwhelming weight of the evidence shows that Jones is

liable on the first two categories of the indebtedness. Jones admitted that he made his bid for the construction job with Robertson in part on the basis of plaintiff's "estimate" of millwork costs of May 1, 1950. That estimate expressly provided: "Delivery on less-than-truckload lots to be charged at 18¢ per mile each way. . . . Curtis prices subject to change by Curtis Company changes." Jones testified that he "used the millwork bid" as a basis of his purchases from plaintiff. Hence the undisputed evidence reflects contractual liability by Jones to plaintiff on these two categories of debt, price advances on Curtis Millwork and deliveries of less than truck load lots at a rate of 18¢ per mile. So plaintiff should have been granted its requested peremptory instruction as to them.

 The third type or category of indebtedness set forth in plaintiff's sworn account was $690.49 for extra materials allegedly ordered by Jones and placed in the Robertson house. S. E. Alexander, testifying for plaintiff, stated that plaintiff had furnished these extra materials to Jones, and that they were ordered by the defendant's foreman on the job at the Robertson house. Jones testified that he had nothing to do with any changes in the plans and specifications, that he did not know when Robertson made any such changes, and that he did not agree to any changes or alterations and additional extra materials purchased from plaintiff by Robertson; and that he had already paid plaintiff the amount of its estimate of millwork costs, $6,506.03. Although the evidence both for plaintiff and defendant as to liability for extra materials is not entirely satisfactory, we think that it made an issue of fact for the jury as to whether the defendant had ordered and agreed to pay for extra materials put in Robertson's house and delivered by plaintiff, in the amount of $690.49. Plaintiff in effect claims that defendant is liable because his foreman, acting for defendant, ordered the extras; and

defendant asserts that he is not liable for the extras, that he knew nothing of them and did not authorize his foreman or anyone else to order them. This made an issue for the jury, and the instructions given appellee sufficiently submitted that question.

When the house was completed, the architect was prepared to pay Jones the contract price, but would not do so until Jones paid all materialmen. So the architect required Jones to execute an affidavit of July 11, 1951, in which he certified that he had paid all materialmen except plaintiff in the amount of $1,695.25, and one other person not involved here. At the same time Jones gave to the architect a check in that amount, payable to plaintiff. Jones testified that he did this under compulsion, in order to get the balance of his contract price; that he disputed then and still disputes plaintiff's contention that he owes any of that amount; and that the parties agreed at the time that the check would be put in escrow until his controversy with plaintiff could be straightened out. He later stopped payment on the check. Robertson's testimony to some extent confirmed Jones' version of that transaction. The jury apparently accepted defendant's version, so he would not be estopped to deny liability to plaintiff. Moreover, under Jones' contract with Robertson for construction of the house, it was agreed that Jones would furnish all of the materials called for in the plans and specifications, and that he would pay for all materials therein; and that although the owner could order changes in the work, such changes were required to be in writing and the contract sum between defendant and Robertson would be adjusted accordingly. There is no evidence in the record indicating any such written changes in the specifications, which are not in the record, so the jury issue was whether Jones agreed to the alterations by ordering the extra materials.

Code Section 1754 creates a rule of evidence only, and not one of pleading and practice. Failure of defendant to file a counter-affidavit precluded him from questioning the correctness of the account, but not liability on any contract. It did not preclude him from showing that the contract sued on was not executed. Gwin v. Fountain, 159 Miss. 619, 650, 126 So. 18, (1930). Defendant denied liability for the entire account, all three categories, and we think that as part of that denial he was entitled to show that he had no contractual liability for the extra materials allegedly ordered by him. As previously stated, the testimony made a question of fact for the jury on that issue and it was warranted in finding for defendant. To that extent the judgment of the trial court is affirmed. As to the other two categories of indebtedness, price advances on Curtis Millwork and mileage charges for less than truck-load deliveries, the judgment of the trial court is reversed and judgment rendered here for appellant, plaintiff below.

Affirmed in part, and in part reversed and judgment rendered for appellant.

All justices concur.