542 So.2d 258 (1989)
RAINBOW RENTAL AND FISHING TOOLS, INC.
v.
DELTA UNDERGROUND STORAGE, INC., Roger Wittig.
No. 58362.
Supreme Court of Mississippi.
March 29, 1989.
*259 William D. Boerner, Boerner, Underwood & Breeland, Brookhaven, for appellant.
James C. Pittman, Jr., Gray, Montague & Pittman, Hattiesburg, for appellees.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
HAWKINS, Presiding Justice, for the Court:
Rainbow Rental and Fishing Tools, Inc., sued Delta Underground Storage, Inc., in the circuit court of Forrest County upon an open account and for attorney's fees. Rainbow recovered only a portion of the account sued upon, and the circuit judge entered an order awarding attorney's fees to Delta.
Rainbow has appealed, arguing Delta failed to file the proper counter-affidavit to its itemized account, and also that it, not Delta, was entitled to attorney's fees under Miss. Code Ann. § 11-53-81 (1980).
We find no error in Rainbow's assignment of error as to the counter-affidavit of Delta's, nor any error in the court's refusal to award Rainbow attorney's fees under Miss.Code. Ann. § 11-53-81 (1980). We do find, however, that the court erred in the order awarding Delta attorney's fees under this statute, and reverse and render on this order.

FACTS
Delta was involved in the underground storage of propane gas. Wells were drilled into the underground salt deposits, and the salt was washed out to form storage cavities in which the gas was stored. Delta had been in this business for approximately 10 years. Rainbow was in the oil field service business, primarily dealing with "fishing"[1] and rental tools.
Sometime in early June of 1985, a section of drilling pipe lodged in an incomplete well that Delta was having drilled. The company in charge of drilling the well for Delta was Challenger Well Services. Hugh Burgin, the manager of Challenger, recommended Rainbow to Roger Wittig, Delta's company man in charge of overseeing the drilling of the well. Wittig contacted Rainbow to perform the fishing job.
There was no discussion between the parties concerning payment for Rainbow's tools in the event of their loss or damage while engaged in the operation. Wittig did not ask for a price book, and Rainbow did not supply him with one. This was Wittig's first "fishing expedition."
On June 8, 1985, Rainbow's personnel went to Delta's well site and for several hours attempted to fish the lodged pipe from the well. Wayne Rowell was the fishing tool supervisor on the site for Rainbow. Following these unsuccessful attempts at fishing the pipe out of the well casing, Rowell consulted with Wittig about what to do next. Wittig said, "Let's run the tool to the bottom of the hole." These attempts to remove the pipe were also unsuccessful. As Rowell and his crew "reeled in" the fishing line, they discovered that some of the tools on the line were missing or damaged.
Wittig asked Rowell to wait while he called Solon Scott, the president of Delta, to ask what he should do in this situation. Scott and Wittig decided the proper course of action was to discontinue the fishing operation and write the drilling pipe off as lost. Wittig related this decision to Rowell. *260 The two did not discuss any further fishing to retrieve Rainbow's lost tools.
Before leaving the Delta well site, Rowell submitted a bill for Wittig to sign. Prices for rental of the tools, the fishing service, and the wages for the crew were filled in on the bill. The lost tools were also itemized on the bill with the word "sale" printed out beside them, but there were no prices given. Wittig totaled up the figures that were included in the itemized bill. The total came to $5,050. Wittig testified at trial that it was his understanding that it was not determined at that point who was at fault for losing the tools. He said Rowell told him that he may have to pay for lost tools. Wittig signed the bill and Rainbow loaded their tools and left the site.
Rainbow submitted its charges to Delta by a two-page invoice. Page 1 reflected the rental of tools and charges for personnel conducting the fishing operation. It totaled $5,529. Page 2 reflected charges for replacement of tools lost, repair of damaged tools and related transportation charges, totaling approximately $28,000.
Scott, upon receiving this bill, telephoned Roy Wyrick, the president of Rainbow to protest the charges for lost and destroyed tools. He offered to pay $5,050 for rental on the tools and services performed by Rainbow's personnel in the fishing operation. Rainbow refused Delta's offer of payment and sued Delta for both rental charges/personnel and tool replacement/repair costs. The total amount sought in this action upon open account was the sum of $32,357.98 plus 1.5% per month interest and reasonable attorney's fees and court costs. The total demand including interest being $39,152.96.
Delta filed their answer on June 13, 1986, and in Paragraph 3 stated:
Defendants admit that Delta Underground Storage, Inc., acting by and through its agent and employee, Roger Wittig, on or about June 8, 1985, ordered and received from Plaintiff certain goods and services, upon open account, but deny the remaining allegations of Paragraph 3 of the amended complaint.
They further state in Paragraph 4 of their answer:
Defendants admit that demand has been made upon them for payment of Plaintiff's account, admit that they have refused to pay the same and deny that they are indebted to Plaintiff as charged in Paragraph 4 of the amended complaint.
On the morning of trial, September 2, 1986, defendants filed a counter affidavit, as required by statute, to contest the charges. The affidavit stated:
The account attached to the complaint herein is not correct in that Defendant's contracted for services only and did not contract for those items reflected on said account as being charged for lost or damaged tools, cost of repair thereof, and other charges related thereto.
At trial Rainbow contended that it was the custom in the oil and gas industry for a well owner to pay for lost and damaged tools in a fishing expedition, and that Delta was a part of the oil and gas industry. Delta denied that it was part of the oil and gas industry and contended that it was part of the "storage well business" and, therefore, not bound by custom of the oil and gas industry. Delta acknowledged at trial it was obligated to Rainbow for $5,529, being the rental and service related items denoted in their invoice.
Delta requested, and received, Instruction D-6 directing the jury to return a verdict for Rainbow in the sum of $5,529, but not more unless it believed that there was a custom of paying for tools "in the industry in which Defendants are doing business." Rainbow requested, and received, Instruction P-6 advising the jury that if it found it was the custom "in the storage well business" for well owners to be responsible for lost and damaged tools, then it should return a verdict for Plaintiff for the value of the tools, i.e. approximately $39,000.
The jury unanimously returned a verdict of $5,529. Following the verdict of the jury, each side filed a motion for attorney's fees. On January 29, 1987, the circuit judge entered an order awarding Delta the *261 sum of $4,260 in payment of attorney's fees. Aggrieved by the verdict of the jury, and by awarding attorney's fees to Delta, Rainbow appeals. They cite two assignments of error:

I. ERROR ON THE COUNTER-AFFIDAVIT.
Rainbow complains on appeal that Delta's counter affidavit did not sufficiently "particularize" wherein plaintiff's account was incorrect; that, therefore, Delta should not have been entitled to deny liability for the value of the lost and damaged tools.[2] Delta submits, on the other hand, that they did not attack the "correctness" of the charges for lost and damaged tools, but rather denied liability for the same on the ground that they did not contract to pay for lost and damaged tools. They reasoned that they were entitled to contest the liability for the lost and damaged tools without regard to the language of their counter affidavit  that, in fact, no counter affidavit was even necessary to authorize Delta to submit proof that they did not contract for lost and damaged tools.
The purpose of the statute requiring affidavits to correctness of open account and copy of account or bill of particulars of demand in every case founded on open account is to dispense with proof of correctness of account. Motive Parts Warehouse, Inc. v. D & H Auto Parts Co., Inc., 464 So.2d 1162 (Miss. 1985). Prior case law clearly demonstrates that a defendant's failure to challenge the correctness of the billing by counter affidavit in no way precludes that party from challenging the underlying contractual liability.
This statute, § 13-1-141, prescribes a rule of evidence and not a rule of pleading and practice; consequently, it does not preclude the defendant from asserting his defense. Gwin v. Fountain, 159 Miss. 619, 126 So. 18 (1930).[3]
In Stockstill v. Gerson, 35 So.2d 60 (Miss. 1948), there was a dispute as to whether the appellant ordered, purchased or received the goods sued on. This Court stated, "Under certain circumstances, a counter affidavit may not have been required as the plea of the general issue would have carried the case to the jury on the issue of liability if the evidence justified it." Stockstill, at 60.
In Sanders & Alexander, Inc. v. Jones, 221 Miss. 143, 72 So.2d 240 (1954), the plaintiff sued defendant on a sworn open account for various items of building materials. Attached to the declaration was a sworn account complying with the statute (now § 13-1-141 Miss.Code 1972). The account set forth the three categories of indebtedness which plaintiff claimed against defendant. The defendant answered denying liability on the ground that he had no contract with the plaintiff. He did not file a counter affidavit which, the Court stated, was required "in order that the defendant may contest the correctness of the various items of the sworn account." Sanders, 221 Miss. at 146, 72 So.2d 240. The jury returned a verdict for the defendant.
Upon appeal by the plaintiff, this Court held that the plaintiff was entitled to judgment on two of the categories of materials *262 because "the overwhelming weight of the evidence shows that Jones is liable on the first two categories." Sanders, 221 Miss. at 148, 72 So.2d 240. The Court pointed out that plaintiff's account detailed the items of charges making up those two categories, that defendant did not file any counter affidavit contesting the correctness of those items and was, therefore, precluded from contesting the correctness of those items. The Court then went on to say, "His defense was therefore limited to a denial of liability." Sanders, 221 Miss. at 147, 72 So.2d 240.
As to the third category set forth in plaintiff's sworn account, for extra materials allegedly ordered by defendant, we sustained the jury's verdict for the defendant, stating that the absence of a counter affidavit did not preclude defendant from showing that he did not contract for the extra materials:
Code Section 1754 creates a rule of evidence only, and not one of pleading and practice. Failure of defendant to file a counter affidavit precluded him from questioning the correctness of the account, but not liability on any contract. It did not preclude him from showing that the contract sued on was not executed. [citation omitted] Defendant denied liability for the entire account, all three categories, and we think that as part of that denial he was entitled to show that he had no contractual liability for the extra materials allegedly ordered by him. As previously stated, the testimony made a question of fact for the jury on that issue and it was warranted in finding for defendant.
Sanders, 221 Miss. at 150, 72 So.2d 240.
In the case at bar, as in Sanders, Delta did not question the correctness of the items composing the account, but rather denied liability for the lost and damaged tools on the ground that it never had contracted to pay for these items. The counter affidavit and its contents, therefore, were irrelevant to the defense that Delta had never contracted for the payment of the lost and damaged tools. Also, McLaurin v. Smith's Poultry & Farm Supply, 499 So.2d 1361 (Miss. 1986). In that case the Court reiterated its stand that "the failure to file a proper counter affidavit does not preclude a defendant from asserting any defenses he may have to claim underlying the open account . ." McLaurin at 1363.
There is no merit to this assignment of error.

II. THE COURT ERRED IN FAILING TO GRANT PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, INTEREST AND COSTS, AND GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES.
Following the jury verdict and entry of judgment, both parties moved for attorney's fees pursuant to the provisions of Miss.Code. Ann. § 11-53-81 (1980). The circuit judge overruled Rainbow's motion for attorney's fees, but sustained Delta's, awarding Delta $4,260 in attorney's fees.
Upon appeal Rainbow argues first that it, not Delta, was entitled to attorney's fees, and also that the circuit court erred in awarding any attorney's fees to Delta.
While we are unable to agree with Rainbow that it was entitled under the statute to attorney's fees, we do agree that the circuit court erred in awarding Delta any attorney's fees.
Miss.Code. Ann. § 11-53-81 in pertinent parts states as follows:
§ 11-53-81. Recovery of Attorney's Fees in Suit on Open Account.
When any person fails to pay an open account within 30 days after receipt of written demand therefore correctly setting forth the amount owed in an itemized statement of the account in support thereof, that person shall be liable for reasonable attorney's fees to be set by the judge for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the plaintiff... . If that person sued on the open account shall prevail in the suit, he shall be entitled to reasonable attorney's fees to be set by the judge.
*263 In order for Rainbow to have been entitled to attorney's fees under this statute, it would be necessary that it secure a "judgment on the claim" in the amount sued for. Here we are not called upon to decide if the amount recovered lacked but a few dollars being the entire amount sued for on open account, which would put an entirely different posture on this case. Rainbow in its complaint alleged it was due the principal sum of $32,357.98 on open account. Its judgment was $5,529, a sum Delta had told Rainbow it was willing to pay. We have held that the provisions of this statute should be strictly construed. Hughes Equipment Co. v. Fife, 482 So.2d 1144 (Miss. 1986); Putt v. Ray Sewell Co., Inc., 481 So.2d 785 (Miss. 1985). Delta had made an unqualified offer to pay Rainbow for rental of the tools and Rainbow's services in the fishing operation before suit was ever filed. Rainbow refused that offer. A creditor may not in such circumstances recover attorney's fees under § 11-53-81 because he has not prevailed on any matter that was in dispute. Because Rainbow recovered no more than Delta had unqualifiedly offered to pay without suit, Rainbow is not a prevailing party within the statute. See, Magnolia Farm Services, Inc. v. Tunica Oil Co., 438 So.2d 285 (Miss. 1983).
Also, under the statute, in order for Delta to have been entitled to attorney's fees, it was also necessary that it "prevail in the suit." Though Delta, both prior to trial and during trial, conceded that it owed the sum of $5,529, this changes nothing. It made no effort to either pay it, tender it into court, or make an offer of judgment under Rule 68 of the Mississippi Rules of Civil Procedure (MRCP).[4]
We therefore affirm the judgment of the lower court finding in favor of Delta, but reverse and render on the order awarding attorney's fees.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.
DAN M. LEE, P.J., and BLASS, J., concur in part and dissent in part.
DAN M. LEE, Presiding Justice, concurring in part, dissenting in part:
I concur in that part of the majority opinion of Presiding Justice Hawkins which denies relief to Rainbow Rental and Fishing Tools, Inc., and the denial of attorney's fees to Rainbow. However, I respectfully dissent as to the reversal of the attorney's fees of $4,260 awarded to Delta pursuant to Miss. Code Ann. § 11-53-81. It is of some note that the last four lines of that statute state:
If that person sued on the open account shall prevail in the suit, he shall be entitled to reasonable attorney's fees to be set by the judge. (Emphasis added)
According to the opinion:
Delta had made an unqualified offer to pay Rainbow for rental of the tools and Rainbow's services in the fishing operation before suit was ever filed. Rainbow refused that offer.
I interpret this language to mean that no suit was necessary to collect the $5,529.00 *264 which the jury found for Rainbow. If this be so, Delta clearly did "prevail in the suit" and "shall be entitled to attorney's fees."
Clearly, the trial Judge's award of attorney's fees to Delta under the facts of this case pursuant to Miss. Code Ann. § 11-53-81 was correct.
I would affirm.
BLASS, J., joins this opinion.
NOTES
[1] "Fishing" is oil field terminology for retrieving stuck drilling pipe from a well casing.
[2] Rainbow is referring to the requirements of MCA § 13-1-141:

§ 13-1-141. Affidavit to Correctness of Account Entitles Affiant to Judgment.
A person desiring to institute suit upon an open account in his favor, may make affidavit to the correctness of such account, and that it is due from the party against whom it is charged. In any suit thereon such affidavit attached to the account shall entitle the plaintiff to judgment at the trial term of the suit, unless the defendant make affidavit and file with his plea that the account is not correct, particularizing wherein it is not correct, in which event the affidavit to the account shall entitle the plaintiff to judgment only for such part of the account as the defendant by his affidavit shall not deny to be due. However, this shall not apply to accounts against decedents and suits against executors or administrators. A defendant desiring to use an open account as a set-off shall be entitled to the benefit of this section.
Also, Rule 10(d) MRCP incorporating Miss. Code Ann. § 11-7-45 (1988).
[3] The Gwin case construed § 1710 of Hemingway's Code of 1927. That section and § 13-1-141 are extremely similar. They are so similar in fact that the Gwin case appears in the "Judicial Decisions" section following § 13-1-141.
[4] Rule 68, MRCP provides in pertinent part:

RULE 68. OFFER OF JUDGMENT
At any time more than fifteen days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within ten days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the court shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the cost incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer... .
As to tender under decisions prior to adoption of the MRCP, see McKendrick v. Lyle Cashion Co., 234 Miss. 325, 106 So.2d 509 (1958); Stableford v. Schulingkamp, 218 Miss. 276, 67 So.2d 306 (1953).