355 So.2d 299 (1978)
VICKSBURG CHEMICAL COMPANY
v.
Clifton THORNELL et ux. and W.M. Alexander et ux.
No. 49955.
Supreme Court of Mississippi.
February 15, 1978.
Rehearing Denied March 15, 1978.
*300 Brunini, Everett, Beanland & Wheeless, William G. Beanland, Robert A. Weems, Vicksburg, for appellant.
Bullard, Campbell & Gee, Robert W. Gee, George N. Chaney, Vicksburg, for appellees.
Before PATTERSON, ROBERTSON and BROOM, JJ.
BROOM, Justice for the Court:
Air pollution and resulting damages are the chief aspects of these two consolidated causes appealed from the Circuit Court of Warren County. Two verdicts of $18,000 each were returned against Vicksburg Chemical Company (appellant), and in favor of the plaintiffs, W.M. Alexander and Roberta Alexander, husband and wife, and Clifton Thornell and Willie Mae Thornell, husband and wife (appellees). We reverse for retrial on the issue of damages only.
The plaintiffs alleged that the air on and over their property was polluted by appellant's chemical plant. Originally fifteen separate suits were filed by residents of the area against appellant but, on motion of plaintiffs to consolidate all the cases, the lower court issued its order consolidating the cases into three packages of five cases each so that there would be only three trials (five cases at one time). Consolidation was in numerical order according to docket numbers whereby the first five cases were tried (including the two now before the Court). The jury returned five identical verdicts for $18,000 each, but after trial and pending appeal, disposition was made of three of the cases, leaving the two now before us.
Each declaration alleged that the plaintiffs owned their residences a short distance west of appellant's plants and had lived there for many years. Other allegations were that beginning in early 1974 an excessive amount of pollutants, including smoke and odors, was emitted into the air by appellant which caused appellees harm, principally in the smelling of obnoxious odors, and making it inconvenient and disagreeable to live in their residences which on occasions were rendered unfit for occupancy.
Appellant argues that the trial court erred in consolidating five cases for trial, granting appellees certain instructions, and refusing others. Appellant further argues that the jury verdicts were excessive.
The rule established in this jurisdiction is "whether a consolidation should be ordered is within the sound discretion of the trial court," and "consolidation of actions in proper cases serves many sound purposes and should be liberally construed. The object is to avoid a multiplicity of suits, to prevent delay, to clear congested dockets, to simplify the work of the trial court and to save numerous costs and expenses." See Stoner v. Colvin, 236 Miss. 736, 110 So.2d 920 (1959); Gwin v. Fountain, 159 Miss. 619, 126 So. 18 (1930); Planters Oil Mill v. Yazoo and M.V.R. Co., 153 Miss. 712, 121 So. 138 (1929).
Here the consolidated cases were based on the same cause of action and each had a common defendant. In our opinion, the lower court did not abuse its discretion in ordering that the cases be consolidated into trials of five each and we would not reverse the causes for that reason. After a careful study of the record, however, we have reached the conclusion that the consolidation and the actions of the jury as shown by the record hereafter discussed had a substantial bearing and influence on the jury and in all likelihood caused the amount of the verdicts to be excessive.
Appellant complains of three instructions given appellees, which instructions were based primarily on what is commonly called the "Mississippi Air and Water Pollution Control Act" enacted by the Legislature as Chapter 258, Laws of 1966. This statute was amended in 1972 and the instructions given plaintiffs and objected to by appellant were based primarily on the amended statute as set out in Mississippi Code Annotated section 49-17-29 (1977 Supp.), which provides:
It shall be unlawful for any person to cause pollution of the air in the state or *301 to place or cause to be placed any waste or other products or substances in a location where they are likely to cause pollution of the air.
Under "Definitions" in the Act, we find the following (Code § 49-17-5 [1977 Supp.]):
(a) "Air contaminant" means particulate matter, dust, fumes, gas, mist, smoke, or vapor or any combination thereof produced by processes other than natural.
(b) "Air pollution" means the presence in the outdoor atmosphere of one or more air contaminants in quantities, of characteristic, and of a duration which are materially injurious or can be reasonably expected to become materially injurious to human, plant or animal life or to property or which unreasonably interfere with enjoyment of life or use of property, throughout the state or throughout such area of the state as shall be affected thereby.
(c) "Air contamination" means the presence in the outdoor atmosphere of one or more air contaminants which contribute to a condition of air pollution.
The declarations filed in the cases sufficiently allege facts which if true would constitute a violation of the act as above quoted. Appellees were granted other instructions dealing with the alleged nuisance. Our opinion is that the instructions granted appellees based on the statute were properly granted and submitted to the jury.
Appellant contends that it was erroneously refused three instructions pertaining to its affirmative defense that appellant had acquired a prescriptive right to emit the alleged pollutants into the air. The facts showed that the initial chemical plant at the location in question was built in 1953 by Spencer Chemical Company for the purpose of producing nitric acid. In 1960 this nitric acid plant was sold to Gulf Chemical Company and at about the same time Southwest Potash Company began operating a potash nitrate plant adjacent to the nitric acid plant. Appellant purchased both properties in July, 1972, and in 1973, built three additional plants primarily for the purpose of manufacturing herbicides and pesticides. About the first of 1974, appellant began operations, and soon began operating another plant making hydrazine, a rocket fuel for the Air Force. This, according to appellant, was discontinued the latter part of the year primarily because of obnoxious odors emitting therefrom.
Appellees correctly contend that the "Air and Water Pollution Act" enacted by the legislature in 1966, and amended in 1972, tolled any prescriptive right gained by appellant or its predecessor in ownership. Also, appellant admittedly added greatly to the output of the nitric acid plant after 1973, and added four chemical plants which produced chemicals other than nitric acid. We agree with the lower court that there is no way to hold that the additional output of chemicals after purchase by appellant in 1972 was a continuation of the prior operation. Clearly there was an extensive change, and a corresponding change in output of pollutants. Therefore, we hold that the lower court made no reversible error in its rejection of instructions requested by appellant.
Appellant contends that the five identical verdicts were excessive, and evinced bias and prejudice on the part of the jury. Although such bias and prejudice are not established by the record, it does indicate that the jury was confused. Confusion of the jury is demonstrated by the fact that each of the five cases was brought by the head of the household and the testimony showed that each of the five cases involved different family situations. The Alexanders had no children living at home; the Thornells had two children living at home; two of the other plaintiffs were single but had children. We recognize the legal principal that in a nuisance action a person who has a property interest, whether ownership or leasehold, may bring a suit for dangers resulting from a nuisance on behalf of himself and all members of his family. Hodges, et ux. v. Town of Drew, 172 Miss. 668, 159 So. 298 (1935); See also 58 Am.Jur.2d, Nuisances §§ 103, 104.
*302 The evidence shows that the five plaintiffs whose cases were tried below lived varying distances from appellant's plants. Some plaintiffs were inconvenienced at times more than others, although the evidence essentially is the same as to all property involved.
Confusion of the jurors is further shown by the record in that on two occasions, after deliberating for some time, the foreman reported to the court that they were unable to reach a verdict and were "hopelessly deadlocked." After the court kept the jury in the room for further deliberation, finally identical $18,000 verdicts were returned in all five cases.
After carefully studying the record and noting the identical verdicts, we are of the opinion that the jury was confused and that this confusion probably resulted from the consolidated cases involving different numbers of people in each case. We conclude that the identical verdicts indicate that the jury did not follow the instructions on damages and in all probability reached a "compromise" verdict. Our view is that had the jury not been confused, and had it followed the court's instructions, the amounts of the verdicts necessarily would have been different in each case. Therefore, reversal is ordered, and a new trial granted on the issue of damages only.
REVERSED AND REMANDED FOR A NEW TRIAL ON THE ISSUE OF DAMAGES ONLY.
PATTERSON, C.J., INZER, and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, LEE and BOWLING, JJ., concur.