604 So.2d 268 (1992)
Steven M. POIRRIER
v.
Louis Fred DEGRANDE.
No. 07-CA-59622.
Supreme Court of Mississippi.
June 17, 1992.
Rehearing Denied August 12, 1992.
Wynn E. Clark, Owen Galloway & Clark, McGuire & Cox, Gulfport, for appellant.
Harry R. Allen, Allen Cobb & Hood, Gulfport, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the court:
Steven M. Poirrier and Louis Fred DeGrande were involved in an accident on October 19, 1986, in the DeSoto National Forest in Harrison County. Poirrier sued DeGrande for negligence. The case was tried on March 16, 1988, and the jury found in favor of DeGrande. At trial, DeGrande engaged the services of Woody Barber and qualified him as an expert witness in the field of accident reconstruction. Because the trial court erred in qualifying Barber as an expert in the field of accident reconstruction when in fact he failed to meet the necessary standards, we reverse and remand for further proceedings.

I.
Louis DeGrande and three of his friends departed from the United States SeaBee *269 Base in Gulfport in a 1976 Ford pickup bound for the DeSoto National Forest to enjoy a day of "mud-riding". Meanwhile, Steven Poirrier and a group of his friends were already in the park riding trail bikes. Poirrier's bike was a 1979 Husky Varna, commonly known as a Husky, and could reach speeds up to 160 miles per hour. The road in the national forest is mainly composed of clay, dirt, and gravel and runs in an east to west direction. It was along this road that the two vehicles collided. According to the testimony of Poirrier, he was traveling about twenty miles per hour and estimated that DeGrande was going about forty to forty-five miles per hour. However, DeGrande offers a different story that estimates his speed at below twenty miles per hour. The parties also disagree as to which of the two vehicles failed to stay in the proper lane at the time of the accident.
Due to the conflicting accounts of the accident, it was incumbent upon the jury to determine how the accident happened and who was at fault. In an attempt to resolve this conflict, DeGrande called Woody Barber as an expert witness in the field of accident reconstruction. Over the objections by Poirrier's counsel, the trial court permitted Barber to offer his opinions as to how the accident occurred. On appeal, Poirrier challenges Barber's qualifications as an expert in the field of accident reconstruction.

II.
The quarrel in this matter centers on the testimony of Barber. At trial, Barber explained his qualifications as an expert:
A. I graduated from High School and I enrolled in Copiah Lincoln Junior College and after about three semesters, I dropped out, and went to work for the Forestry Service. And then I later went into service, married and went into service. When I returned from the service, I went into the automotive field, and then I was exposed to seminars and training programs that were sponsored by the industry and also by the companies I was employed with, and the seminars consisted of equipment use as well as diagnostic and other procedures that would be relative to the repair and making appraisal of damaged automobiles.

.....
Q. Tell the jury your employment experience.
A. I went to work for a truck and equipment dealership in Jackson, was my first experience in a dealership. That was as an apprentice in the body shop, frame shop, and after approximately two years with this dealership, I hired to a Chrysler dealership in Jackson as a painter, and after a couple of years as a painter, then I was hired as a bodyman in this same dealership. And after five years with this dealership, I was  I became manager of the body shop, which consisted of a job I had already been trained into, as far as the work was concerned. I became manager, and worked for that dealership 12 years. And in that 12-year span, I dropped out and opened my own shop as an independent and it was a complete repair body and frame shop.
After the 12 years with the Chrysler dealership, I hired to a Oldsmobile dealership in Jackson as the body shop manager and after that I was hired by a local appraisal service in Jackson. It went under the name of Independent Auto Appraisal Service, and I worked for them a short time in Jackson, and that's when I transferred to the Mississippi Coast.
Q. Alright. How long have you been doing work with an independent appraisal service, the one in Jackson and the one on the Coast?
A. I would say approximately 23 years.
Q. Alright. Have you had occasion this period of time to be called upon to make appraisals and analysis of damages to vehicles to determine the nature of collisions and the mechanics of collisions between vehicles?
A. I have.
Q. And how often have you done that?
A. I have  I do that on a regular basis.
Q. Alright. Have you qualified as an expert witness in state or federal courts *270 to testify regarding your opinions about the nature of damage to vehicles and the mechanics of those collisions?
A. I have.
Q. And how many times?
A. I would say 20 to 25 times.
Q. Alright. In the process of those, these occasions, have you been called upon to analyze and give opinions about the impacts and the nature of impacts between two vehicles?
A. I have.
(emphasis added)
At this point, he was offered as an expert "in the field of appraisal, interpretation of vehicular damage for the purpose of reconstruction of the nature and mechanics of impacts between vehicles."
Barber gave testimony about how the accident between Poirrier and DeGrande occurred. He testified that, "In my opinion from what I saw the damage of the pickup, it [the accident] did not happen in that fashion [as Poirrier claimed]." Barber gave testimony about whether the two vehicles made contact and where they made contact. He also told the court that the accident appeared to be "a side swipe".
Mississippi recognizes and allows the use of accident reconstruction experts at trial. Miller By Miller v. Stiglet, Inc., 523 So.2d 55 (Miss. 1988); Hollingsworth v. Bovaird Supply Co., 465 So.2d 311 (Miss. 1985).
Once it is determined that expert testimony will be useful to a finder-of-fact, a determination must then be made that the expert is indeed qualified in his field. That determination is left to the sound discretion of the trial court. Miller, 523 So.2d at 59-60. Hall v. Hilbun, 466 So.2d 856, 873 (Miss. 1985); House v. State, 445 So.2d 815, 822 (Miss. 1984). The issue in this case is whether Barber was qualified to give expert testimony at trial.
While neither Miller nor Hollingsworth laid down specific qualifications with respect to accident reconstruction experts, the qualifications of Barber fall short of what it takes to justify admission of accident reconstruction expert testimony. By comparison, both experts in Miller and Hollingsworth graduated from the Traffic Institute Accident Investigation School of Northwestern University. In Miller, the expert witness also had fourteen years experience as a police officer, during twelve of which he worked accidents, investigating between four hundred and six hundred accidents. Miller, 523 So.2d at 57. In Hollingsworth, the expert witness had vast experience in police department investigating and reconstructing traffic accidents, experience gained at Ford, General Motors and Chrysler Proving Grounds, and in teaching traffic accident reconstruction in approximately thirty-five states. Hollingsworth, 465 So.2d at 313.
Rule 702 of the Mississippi Rules of Evidence provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Barber's education and qualifications reveal that he has technical or specialized knowledge of automobile body damage and automobile damage costs, but his qualifications do not reveal any specialized knowledge that would allow him to reconstruct the events of a collision as an expert under Rule 702. While Barber could qualify as an expert to automobile damage and repair and as to cost of repair, Barber does not meet the qualifications regarding accident reconstruction pursuant to Miller and Hollingsworth. Barber does not have the training or the experience to qualify him as an expert accident reconstructionist. Indeed, from reading his testimony, it is entirely possible that most, if not all, of his testimony as an expert was to automobile damage repair and related cost as opposed to the technical, difficult, and scientific reconstruction of collision occurrences and automobile responses. The circuit court erred in allowing such testimony. The case is hereby reversed and remanded.
REVERSED AND REMANDED.
*271 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.