## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CA-00172-SCT

*LANICE FIELDER AND BOBBIE FIELDER*

*v.*

*MAGNOLIA BEVERAGE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/96 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | LAUREL G. WEIR |
| | TIM WILSON |
| ATTORNEY FOR APPELLEE: | MARK HERNDON TYSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 04/29/1999 |
| MOTION FOR REHEARING FILED: | 5/10/99 |
| MANDATE ISSUED: August 5, 1999 | |

**BEFORE PRATHER, C.J., SMITH AND MILLS, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. On December 18, 1992, Appellant Lanice Fielder was operating a pickup truck along U.S. Highway 80 West in Lauderdale County, Mississippi. Passengers in the vehicle were Stevie Fielder, Ricardo Fielder, and Appellant Bobbie Fielder. The Fielders contend that on the day in question, they were returning to their home in Newton County along Highway 80. As they approached a sharp curve and a railroad trestle, they contend that a Magnolia Beverage Company delivery truck being driven by Jeffrey Moss in the approaching lane had crossed over the center of the road. The vehicles did not collide, but the Fielders contend that they were forced off the road and in so doing hit the support pillars of the railroad trestle. Lanice Fielder testified that she was traveling at forty-five miles per hour. The posted speed limit on this portion of the highway was thirty-five miles per hour.

¶2. Jeffrey Moss stated that he was returning to Meridian on Highway 80 East on the day in question at thirty (30) to thirty-five (35) miles per hour. After crossing under the trestle, Moss noticed the approaching pickup truck as it rounded a corner. Moss claims the Fielder truck began to skid off the road as it came around the corner, and he observed the truck strike the trestle in his rear-view mirror. Moss turned around and returned to the accident site.

¶3. After the accident, Lauderdale County Deputy Sheriff James Secrist was summoned to the scene. Describing the terrain, Deputy Secrist stated that there was a curve some eighty yards before the trestle as you approach from the east. Secrist discovered skid marks from the Fielder truck approximately sixty-seven paces east of the railroad trestle. Also, the deputy found that the road was wet at the point where the Fielder truck left the highway.

## The Proceedings Below

¶4. On January 4, 1993, Lanice Fielder filed a Complaint in the Circuit Court of Lauderdale County, Mississippi, against Appellee Magnolia Beverage Company ("MBC"). In her Complaint, Lanice sought damages for personal injuries she allegedly sustained in an automobile accident which occurred on or about December 18, 1992. On January 15, 1993, Lanice Fielder amended her complaint seeking additional damages for property loss. On January 26, 1993, MBC filed its Answer and Defenses to the Amended Complaint.

¶5. On February 1, 1993, Bobbie Fielder filed a complaint against MBC arising out of the same December 18, 1992, automobile accident. On February 17, 1993, MBC filed its Answer and Defenses.

¶6. On October 11, 12, and 13, 1993, a trial was held in the action brought by Lanice Fielder. After completion of the trial, a unanimous jury verdict was returned in favor of MBC and judgment was entered accordingly. After pursuing various unsuccessful post-trial motions, Lanice Fielder perfected her appeal to this Court on October 21, 1993. The appeal was assigned to the Court of Appeals which reversed and remanded the case for a new trial on June 27, 1995. *See **Fielder v. Magnolia Beverage Co.***, 667 So.2d 640 (Miss. App. 1995)(mem.).

¶7. By order dated October 14, 1996, the actions of Lanice Fielder and Bobbie Fielder were consolidated by the trial court pursuant to Rule 42(a) of the Mississippi Rules of Civil Procedure. On December 16, 17, and 18, 1996, a trial was held in the consolidated cases. At the conclusion of the trial, the jury returned a verdict in favor of MBC as to both claims, and judgment was entered accordingly. By order dated January 2, 1997, the Fielders' Motion for JNOV and New Trial was denied.

¶8. Aggrieved, the Fielders now appeal to this Court and raise the following issues for review:

**I. THE TRIAL COURT ERRED IN LIMITING THE CROSS-EXAMINATION OF JEFFREY MOSS.**

**II. THE TRIAL COURT ERRED IN REFUSING JURY INSTRUCTION P-6 AND NOT GRANTING BOBBIE FIELDER A GUEST PASSENGER INSTRUCTION.**

**III. THE TRIAL COURT ERRED IN CONSOLIDATING THE CASES OF LANICE FIELDER AND BOBBIE FIELDER FOR TRIAL PURPOSES.**

**IV. THE TRIAL COURT ERRED IN GRANTING INSTRUCTIONS D-13 AND D-14.**

**V. THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL.**

**VI. THE TRIAL COURT ERRED IN PERMITTING THE TESTIMONY OF THE DEFENSE'S EXPERT WITNESS.**

## STANDARD OF REVIEW

¶9. The verdict of the jury is to be given great weight. No trial is free of error; however, to require reversal the error must be of such magnitude as to leave no doubt that the appellant was unduly prejudiced. *Davis v. Singing River Elec. Power Ass'n*, 501 So.2d 1128, 1131 (Miss. 1987); *Parmes v. Illinois Cent. Gulf R.R.*, 440 So.2d 261, 268 (Miss.1983). Where error involves the admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party. *In re Estate of Mask*, 703 So.2d 852, 859 (Miss. 1997); *Terrain Enters., Inc. v. Mockbee*, 654 So.2d 1122, 1131 (Miss.1995). This Court has held that "[t]he standard of review regarding admission [or exclusion] of evidence is abuse of discretion." *Thompson Mach. Commerce Corp. v. Wallace*, 687 So.2d 149, 152 (Miss.1997).

¶10. This Court's standard of review in reviewing jury instructions is as follows: In determining whether reversible error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. *Coleman v. State*, 697 So.2d 777, 782 (Miss.1997); *Collins v. State*, 691 So.2d 918, 922 (Miss.1997) (*citing Hickombottom v. State*, 409 So.2d 1337, 1339 (Miss.1982)).

¶11. This Court will reverse for admission of expert testimony only when the trial court abused its discretion. *Materials Transp. Co. v. Newman*, 656 So.2d 1199, 1203-04 (Miss. 1995); *Dedeaux v. J.I. Case Co.*, 611 So.2d 880, 886 (Miss.1992). The sufficiency of foundational facts or evidence on which to base an opinion is a question of law. *Gulf Ins. Co. v. Provine*, 321 So.2d 311, 314 (Miss.1975). These facts must afford a "reasonably accurate basis" for the expert's conclusion. *Id.* at 314. Expert testimony must be consistent with scientific principles "as established by the laws of physics or mechanics." *Id*. The scientific principles underlying an expert's opinion must be generally accepted by practitioners in the expert's field. *May v. State*, 524 So.2d 957, 963 (Miss.1988); M.R.E. 702, Comment.

## LEGAL ANALYSIS

### I. THE TRIAL COURT ERRED IN LIMITING THE CROSS-EXAMINATION OF JEFFREY MOSS.

¶12. The Fielders' first contention of error involves the testimony of Jeffrey Moss, the driver of MBC's truck. In the questioning of Michael Davis, president of MBC, the Fielders sought to elicit testimony regarding the post-accident driving record of Moss, namely having pled guilty to a DUI offense. The trial court refused to allow such an examination, noting that the Fielders had not limited their inquiry to the relevant time frame. Prior to the testimony of Moss, MBC moved *in limine* to preclude the Fielders from questioning Moss with respect to his driving record after the accident in question. In response to an inquiry by the trial court, the Fielders indicated that they did not intend to question Moss with respect to a number of traffic violations that had occurred since the December 18, 1992, accident. The trial court granted MBC's *in limine* request and noted that the intended testimony was in no way admissible under Rules 608 and 609 of the Mississippi Rules of Evidence (M.R.E.).

¶13. The Fielders contend that the trial judge's ruling in this regard was erroneous because MBC "opened the door" by first inquiring of Davis about the company's safety precautions in hiring drivers. The record

reveals that Davis testified on direct examination to the fact that MBC drivers were required to have a Class A or Class B license under the Mississippi Department of Transportation's rulings. Davis further testified that Moss had a Class A license and was "one of my best (drivers)." When the Fielders attempted to cross-examine Davis concerning **subsequent** traffic violations, including DUI and speeding, MBC's objections were sustained. Over objections, the Fielders were able to elicit testimony from Davis that Moss was no longer employed with MBC.

¶14. M.R.E. 611(b) sets forth the scope of cross-examination and reads, "Scope of Cross-Examination. Cross-examination shall not be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." M.R.E. 611(b) allows wide-open cross-examination so long as the matter probed is relevant. M.R.E. 401 defines what is relevant evidence:

> "Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

M.R.E. 401. The trial court sustained MBC's objection to the Fielders' cross-examination of Davis, because it found the inquiry irrelevant as improper in time frame. In other words, Moss's driving record **after** the accident has no bearing on the accident itself.

¶15. Questions of relevancy and admissibility are left to the discretion of the trial court. *Century 21 Deep South Properties, Ltd. v. Corson*, 612 So.2d 359, 369 (Miss. 1992). The scope of cross-examination is broad. However, its primary limit is the discretion of the trial judge and reversal only follows an abuse of that discretion. M.R.E. 611(b); *Cantrell v. State*, 507 So.2d 325, 330 (Miss.1987). Therefore, MBC argues that the trial court here was well within its discretion, because evidence showing Moss had received traffic violations after the accident is wholly irrelevant to the jury's determination of the matters at issue. MBC further argues that such testimony would not have assisted the jury in determining the relevant issues involving the December 18, 1992, accident and would have only confused or mislead the jury by causing them to believe that Moss was a chronic violator of traffic laws. *See* M.R.E. 403.

¶16. Also, the Fielders assert that such testimony is admissible under the exceptions to M.R.E. 404(b), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

M.R.E. 404(b). The Fielders quote the Comment to M.R.E. 404(b), but do not specifically refer this Court to any one particular exception. They do however cite *Neal v. State*, 451 So.2d 743 (Miss. 1984), for the proposition that evidence of another crime is admissible where the offense in the instant case and in the past offense are so inter-connected as to be considered part of the same transaction. Also, the Fielders refer to *Carter v. State*, 450 So.2d 67 (Miss. 1984), where this Court said that evidence of a prior crime or act may be admitted to show identity, knowledge, intent, or motive.

¶17. Regardless, Moss may have opened the door to permit cross-examination of Davis on his knowledge of the traffic violations. In affirming the admission of prior bad acts evidence in *Puckett v. State*, 1999 WL

-----(Miss. --, 1999), this Court held that:

> Consequently, in the case at bar, once Puckett offered evidence of his good character in the form of the glowing recommendation letter from Griffis and the fact that he did not act hostile upon his termination, this opened the door for the prosecution to offer evidence in rebuttal proving otherwise. Accordingly, this testimony was properly admitted under Rule 404(a)(1).

Under the *Puckett* rationale, Moss also opened the door to inquiry into specific instances of conduct where Moss offered character evidence in the form of Davis's opinion testimony. Additionally, the analysis as to the admissibility of specific instances of conduct on cross-examination under Rule 405 appears to apply equally to prior and subsequent acts. Similar to Rule 404, Rule 405 makes no distinction between prior and subsequent specific instances. *United States v. Latney*, 108 F.3d 1446, 1449 (D.C. Cir. 1997).

¶18. As recognized by a number of courts, in the context of the admissibility of other bad acts evidence, Rule 404 makes no distinctions between prior and subsequent acts. *See* ***Bullock v. Virginia***, 498 S.E.2d 433, 437 (Va. App. 1998) (holding that the same principle of admission of prior bad acts "applies equally in cases of subsequent bad acts."); ***United States v. Whaley***, 786 F.2d 1229, 1232 (4th Cir. 1986) ("The mere fact that the "other acts" at issue occurred after the events charged in the indictment does not render them irrelevant. ...Subsequent conduct may be highly probative of prior intent."). ***United States v. Latney***, 108 F.3d 1446, 1449 (D.C. Cir. 1997) (*quoting* ***United States v. Delgado***, 56 F.3d 1357, 1365 (11th Cir.1995)) ("'the principles governing what is commonly referred to as other crimes evidence are the same whether the conduct occurs before or after the offense charged'").

¶19. Nevertheless, it was harmless error to prohibit Fielder from inquiring into Davis's knowledge of relevant specific instances of Moss's conduct on cross-examination. "Generally, character evidence is not admissible in civil cases" unless character is one of the issues in the case. ***Daniels by Glass v. Wal-Mart Stores, Inc.***, 634 So. 2d 88, 93 (Miss. 1993). Also, the accident occurred in 1992 and the subsequent traffic violations occurred sometime in 1995 or 1996. Davis's opinion that Moss was one of his best drivers refers to the period during which Moss was employed by MBC. It is not clear from the record whether these violations occurred during the time in which Moss was employed with MBC or after his employment ended. If the violations occurred during his employment, the Fielders would be entitled to impeach Davis's general opinion testimony. However, since the record is not clear as to the time frame involved, we can not say that the trial court erred in prohibiting the cross-examination on the issue of Moss's driving record. The trial court is affirmed.

## II. THE TRIAL COURT ERRED IN REFUSING JURY INSTRUCTION P-6 AND NOT GRANTING BOBBIE FIELDER A GUEST PASSENGER INSTRUCTION.

**and**

## III. THE TRIAL COURT ERRED IN CONSOLIDATING THE CASES OF LANICE FIELDER AND BOBBIE FIELDER FOR TRIAL PURPOSES.

¶20. The Fielders next contend that the trial court erred in refusing jury instruction P-6. Jury instruction P-6 reads, as follows:

> The Court instructs the jury that Plaintiff is what is known in law as a guest passenger and is not responsible for any of injuries or damages she may have sustained in the accident and therefore if you

believe from a preponderance of the evidence in this case that defendant caused by their negligence or contributed to the cause of the accident by negligence on their part and that plaintiff was injured and damaged by any such negligence on the part of defendant, then it is yur [sic] sworn duty to return a verdict for the plaintiff against the defendant and this is true whether you do or do not believe that Lanice Fielder was also guilty of negligence.

The trial court refused the instruction on grounds that it was an incorrect statement of the law based upon Miss. Code Ann. § 85-5-7 (1991), and specifically, that it did not properly address the issues of relative fault and joint and several liability.

¶21. The Fielders argue that the instruction was correct, and if not, the trial court should have amended the instruction. For good measure, the Fielders also complain "otherwise it was gross error to combine the cases for trial over objection of the appellants." Thus, their first complaint of error is that jury instruction P-6 did not violate the mandate of Miss. Code Ann. § 85-5-7 (1991).

¶22. Section 85-5-7 states:

(1) As used in this section "fault" means an act or omission of a person which is a proximate cause of injury or death to another person or persons, damages to property, tangible or intangible, or economic injury, including but not limited to negligence, malpractice, strict liability, absolute liability or failure to warn. "Fault" shall not include any tort which results from an act or omission committed with a specific wrongful intent.

(2) Except as may be otherwise provided in subsection (6) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be joint and several only to the extent necessary for the person suffering injury, death or loss to recover fifty percent (50%) of his recoverable damages.

(3) Except as otherwise provided in subsections (2) and (6) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be several only, and not joint and several and a joint tort-feasor shall be liable only for the amount of damages allocated to him in direct proportion to his percentage of fault. In assessing percentages of fault an employer and the employer's employee or a principal and the principal's agent shall be considered as one (1) defendant when the liability of such employer or principal has been caused by the wrongful or negligent act or omission of the employee or agent.

(4) Any defendant held jointly liable under this section shall have a right of contribution against fellow joint tort-feasors. A defendant shall be held responsible for contribution to other joint tort-feasors only for the percentage of fault assessed to such defendant.

(5) Nothing in this section shall eliminate or diminish any defenses or immunities which currently exist, except as expressly noted herein.

(6) Joint and several liability shall be imposed on all who consciously and deliberately pursue a common plan or design to commit a tortious act, or actively take part in it. Any person held jointly and severally liable under this section shall have a right of contribution from his fellow defendants acting in concert.

(7) In actions involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault.

(8) Nothing in this section shall be construed to create a cause of action. Nothing in this section shall be construed, in any way, to alter the immunity of any person.

Miss. Code Ann. § 85-5-7 (1991).

¶23. MBC argues that P-6 as offered by the Fielders would have permitted a verdict in favor of Bobbie Fielder against MBC for the full amount of all damages she sustained, regardless of the fault of Lanice Fielder, in clear violation of Section 85-5-7 which provides that joint and several liability shall be applicable only up to fifty percent (50%) of a plaintiff's recoverable damages. Further, subsection 7 provides that in all instances where there are joint tortfeasors, the finders of fact must determine the relative percentages of fault for each culpable party.

¶24. MBC argues that the trial court properly gave instructions D-23 and D-25 to the jury which address these exact issues, as follows:

If you find from a preponderance of the evidence in this case that:

1. Magnolia Beverage Company, Inc., the Defendant was negligent; and

2. Lanice Fielder, Plaintiff, was negligent; and

3. The negligence of both Magnolia Beverage Company, Inc., Defendant, and Lanice Fielder, Plaintiff, were proximate contributing causes of the accident in this case; and

4. Lanice Fielder and Bobbie Fielder, Plaintiffs, sustained injuries and damages caused by the combined negligence of Magnolia Beverage Company, Inc., Defendant, and Lanice Fielder, Plaintiff,

then you will, in arriving at your verdict, determine that sum of money which will fairly and adequately compensate Lanice Fielder and Bobbie Fielder, Plaintiffs, for said injuries and damages, then reduce this sum in proportion to the causal negligence attributed to Lanice Fielder, Plaintiff, using the following method:

1. Determine the proportion that Plaintiff's causal negligence bears to the causal negligence as a whole, as a part or percentage of 100% (100%= total causal negligence of both factors in case);

2. Multiply the sum of money determined as damages by the percentage figure representing the proportion of Plaintiff's causal negligence;

3. Subtract the result of your multiplication from the sum you first determined to be Plaintiff's damages; and

4. Return your verdict for Lanice Fielder, Plaintiff, and Bobbie Fielder, Plaintiff, for the damages remaining after you have reduced them in proportion to Plaintiff's causal negligence.

When you reach a verdict in this case, it should be written on a separate sheet of paper, need not be signed by you, and may be in any of the following forms:

1. If you find that the Plaintiff, Lanice Fielder, was totally at fault, then the verdict shall be as follows:

"We, the jury, find for the Defendant, Magnolia Beverage Company, Inc."

2. If you find that the Defendant was totally at fault, the form of your verdict shall b: (sic)

"We, the jury, find for the Plaintiff, Lanice Fielder, and assess her damages At $ _____."

"We, the jury, find for the Plaintiff, Bobbie Fielder, and assess her damages At $ _____."

3. If you find that this accident was the result of the combined fault of the Plaintiff, Lanice Fielder, and the Defendant, Magnolia Beverage Company, Inc., then your verdict shall be as follows:

"We, the jury, find the Plaintiff's, Lanice Fielder, total actual or compensatory damages to be $ _____."

"We, the jury, find the Plaintiff's, Bobbie Fielder, total actual or compensatory damages to be $ _____."

"We, the jury, find the Plaintiff, Lanice Fielder, _____% negligent."

"We, the jury, find the Defendant, Magnolia Beverage Company, Inc. was _____% negligent."

"Therefore, we reduce the Plaintiff's recovery in accordance with instruction D-23 to the net amount of $_____ for Bobbie Fielder and $_____ for Lanice Fielder."

THE COMBINED NEGLIGENCE OF BOTH THE PLAINTIFFS AND THE DEFENDANT MUST TOTAL 100%.

¶25. Section 85-5-7 allows for determination of percentage of fault in a civil case. *Mississippi Power & Light Co. v. Lumpkin*, 725 So.2d 721, 743 (Miss. 1998) (Smith, J., concurring in part and dissenting in part). The instructions given (D-23 and D-25) combined instructions on the apportionment of fault between joint tortfeasors as to Bobbie's injuries with instructions on determining Lanice's contributory negligence for her own injuries. By so doing the jury was expressly instructed to reduce Bobbie's recoverable damages by the percentage of Lanice's contributory negligence.

¶26. Bobbie's damages and right to recover from MBC should have been handled in instructions separate from Lanice's. As to Bobbie the jury should have been instructed to determine (1) Bobbie's damages; and (2) the apportionment of fault between Lanice and MBC. As to Lanice the jury should have been instructed to determine (1) Lanice's damages; and (2) Lanice's contributory negligence, if any.

¶27. The instruction offered by the plaintiffs for determining whether MBC's negligence in any way caused Bobbie's injuries satisfied § 85-5-7. The instruction merely stated that the jury should find that Bobbie was entitled to recover from MBC if it found that MBC's negligence in any way caused her injuries. The instruction did not provide that MBC was responsible for all of Bobbie's recoverable damages. And any apportionment of fault between MBC and Lanice, as joint tortfeasors towards Bobbie, could have been handled in a separate jury instruction.

¶28. Nevertheless, this error was also harmless, as the jury obviously found no fault on the part of MBC.

The form of the verdict handed down indicated that the jury found Lanice Fielder to be totally at fault.

¶29. Under this issue heading, the Fielders also mention in passing that the trial court erred in consolidating these two cases.[1] Specifically, the Fielders state, "Plaintiff contends that the Instructions were correct and otherwise it was gross error to combine the cases for trial over objection of the appellants." The record indicates that MBC moved to consolidate the two cases on March 20, 1996. On March 27, 1996, Plaintiffs objected to consolidation. By order dated October 14, 1996, the actions of Lanice Fielder and Bobbie Fielder were consolidated by the trial court pursuant to Mississippi Rule of Civil Procedure (M.R.C.P.) 42(a). Although the transcripts of the motion hearing on consolidation were not included in the record, it is clear from the order that the trial court relied upon Rule 42(a) and found that the cases should be consolidated to avoid unnecessary costs or delay as both cases involve a common questions of law and fact.

¶30. This Court stated in ***Vicksburg Chem. Co. v. Thornell***, 355 So.2d 299, 300 (Miss. 1978), as follows:

> The rule established in this jurisdiction is "whether a consolidation should be ordered is within the sound discretion of the trial court," and "consolidation of actions in proper cases serves many sound purposes and should be liberally construed. The object is to avoid a multiplicity of suits, to prevent delay, to clear congested dockets, to simplify the work of the trial court and to save numerous costs and expenses." *See **Stoner v. Colvin***, 236 Miss. 736, 110 So.2d 920 (1959); ***Gwin v. Fountain***, 159 Miss. 619, 126 So. 18 (1930); ***Planters Oil Mill v. Yazoo and M. V. R. Co.***, 153 Miss. 712, 121 So. 138 (1929).

Therefore, applying this liberal standard, the trial judge was easily within the discretion afforded him when he consolidated these two cases which arose from the same accident. The Fielders' complaint of error about consolidation is thus without merit.

## IV. THE TRIAL COURT ERRED IN GRANTING INSTRUCTIONS D-13 AND D-14.

¶31. The Fielders next complain that the trial court improperly granted defense instructions D-13 and D-14, because "the Instructions are in error and part of it is because of the erroneous trial of the cases together when different law applied as to each plaintiff." Immediately above it was found that the cases were properly consolidated under the liberal standard afforded M.R.C.P. 42(a), so this contention is now settled.

¶32. Instruction D-13 stated:

> You are instructed that it is the duty of the Plaintiff, Lanice Fielder, to drive her 1984 Chevrolet C-10 pickup at a reasonable rate of speed under the circumstances then confronting her. It was also her duty to keep a reasonable lookout to the front and side of her moving vehicle to keep it under reasonable and easy control, and to anticipate and expect the presence of other vehicles which were also using the highway at the same time.
>
> You are further instructed that if you find from the evidence that the Plaintiff, Lanice Fielder, violated any of the described duties and that such acts, if any, on her part were the sole proximate cause of the accident and any injuries sustained by her, it is your duty to return a verdict in favor of the Defendant.

¶33. Instruction D-14 read:

You are instructed that it was the duty of the Plaintiff, Lanice Fielder, to drive her vehicle at a rate of speed which was not greater than the lawful speed limit and to reduce such speed when approaching and going around a curve, and to maintain reasonable control of her automobile; and her failure, if any, to discharge such duties is negligence.

Accordingly, if you believe from the evidence that Lanice Fielder failed to reduce the speed of her automobile on approaching and going around a curve, or if you believe from the evidence that she was traveling at a rate of speed greater than the lawful speed limit, and in the exercise of reasonable care she should have reduced her speed while going around the curve while traveling on a wet highway, or she failed to maintain reasonable control of her pickup, then she was guilty of negligence: and if you further believe that such negligence, if any, was the sole proximate cause of the accident, then it is your sworn duty to find in favor of the Defendant, Magnolia Beverage Company, Inc.

¶34. When asked to state his objection to D-13 by the trial court, the Fielder's counsel replied:

In the second sentence it says under easy control which is the Mississippi Supreme Court has condemned the giving of that type of instruction. It is the duty of a driver to keep his vehicle under easy control and, therefore, we object to it on that ground. Also, it just says under the circumstances then confronting her in the first sentence we contend that the rate of speed and the reasonable rate of speed under the conditions then confronting her is not the word that should be used. (sic)

¶35. Although the Fielders do not refer this Court to any specific case, the quote above by the Fielders' counsel is apparently in reference to those cases where this Court has held that instructions which require vigilance on the part of a driver have been condemned as requiring more than the exercise of reasonable care on the part of a motorist. *See Turner v. Turner*, 524 So.2d 942, 947 (Miss. 1988) (holding an instruction erroneous because it placed a higher burden on the driver Turner than that of reasonable care); *Crossley v. James*, 365 So.2d 957 (Miss.1978) (holding that it was reversible error to grant an instruction which places upon defendant the burden of avoiding a collision); *Jones v. Phillips*, 263 So.2d 759, 762-63 (Miss.1972) ("avoid the collision" and "vigilant lookout" instructions were erroneous, because both instructions, considered together, placed a higher duty upon defendant than the law requires); *but see Miles v. Duckworth*, 481 So.2d 757, 758 (Miss.1985) (upheld an instruction that stated that if defendant "failed to keep a reasonable and proper lookout for other traffic and vehicles; or if he failed to have his vehicle under reasonable and proper control.... then such action or actions, if any, ... constitutes negligence") .

¶36. MBC argues that no such burden or duty was placed upon Lanice Fielder by instruction D-13. As evidence thereof, MBC contends that instruction D-13 is virtually identical to an instruction approved by this Court in a recent case. *Church v. Massey*, 697 So.2d 407, 412 (Miss. 1997). There, the instruction at issue read:

You are instructed that it was the duty of the Plaintiff, Gary W. Church to drive his motorcycle at a reasonable rate of speed under the circumstances then confronting him. It was also his duty to keep a reasonable lookout to the front and sides of his moving motorcycle to keep it under reasonable and easy control and anticipate and expect the presence of other vehicles which were also using 8th Street at the same time.

*Id.* Likewise, this Court approves instruction D-13, because upon comparison the two are in fact virtually

identical.

¶37. In regards to instruction D-14, the Fielders offer this Court no argument other than their objection made at trial. At trial, the Fielders objected on grounds that "[i]t's not every curve in this road that a person is required to reduce the speed." The trial court overruled the objection. MBC contends that the trial court properly gave instruction D-14, because Miss. Code Ann. § 63-3-505 states, in pertinent part, that "[t]he driver or operator of any motor vehicle must decrease speed when . . . approaching and going around a curve." Miss. Code Ann. § 63-3-505 (1996).

¶38. In *Vise v. Vise*, 363 So.2d 548 (Miss. 1978), this Court approved an instruction requiring the driver of a motor vehicle to decrease speed when approaching and going around a curve. *Id.* at 551. Therefore, according to statutory mandate and case precedent, we hold that the trial court properly granted instruction D-14. Read as a whole and in context, instructions D-13 and D-14 fairly announce the law and create no injustice; thus, no reversible error is found.

## V. THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL.

¶39. As the trial court was preparing jury instructions, the Fielders raised a charge of misconduct against the jury bailiff, Albert Chisolm. The Fielders contend on appeal, as they did at trial, that the bailiff made prejudicial remarks to the jury justifying the trial judge declaring a mistrial. The Fielders argue that they heard the bailiff tell the jury that the case was being delayed by Fielders' counsel. Further, upon hearing this statement, the jury erupted into laughter. The Fielders argue that a mistrial should have been granted under Uniform Rules of Circuit and County Court Practice Rule (UCCCR) 3.12.

¶40. The record indicates that the trial judge heard testimony outside the presence of the jury from Lanice Fielder, Steven Fielder, Bobbie Fielder, and Albert Chisolm regarding exactly what was said. According to the bailiff, he advised the jury that he was going to determine how much longer their wait would be when one of the jurors indicated that the delay was the fault of the Fielders' counsel. Moreover, the bailiff refuted making any derogatory statements regarding counsel. The Fielders moved for a mistrial, and in denying that motion, the trial court noted that it would have impossible for the Fielders to have seen into the jury room from where they were seated. Thus, the Fielders could not have seen who actually made the statements. The trial judge also noted the bailiff's impeccable service record.

¶41. UCCCR 3.12 states:

> Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party's attorneys, or someone acting at the behest of the party or the party's attorney, resulting in substantial and irreparable prejudice to the movant's case.

> Upon motion of a party or its own motion, the court may declare a mistrial if:

> 1. The trial cannot proceed in conformity with law; or

> 2. It appears there is no reasonable probability of the jury's agreement upon a verdict.

In *DeLaughter v. Lawrence County Hosp.*, 601 So.2d 818, 820 (Miss. 1992), this Court said:

In civil cases, this Court leaves the grant or denial of a mistrial or new trial founded upon juror misconduct to the sound discretion of the trial court. *Atwood v. Lever*, 274 So.2d 146, 147 (Miss.1973). "A mistrial or a new trial should not be granted on this ground in a civil case, unless the circumstances indicate some prejudice, wrongful intent, or unfairness." *Id*.; *see also* ***Middleton v. Evers***, 515 So.2d 940 (Miss.1987); ***Great American Surplus Lines Ins. v. Dawson***, 468 So.2d 87 (Miss.1985).

Furthermore, Mississippi law presumes that jurors follow the trial judge's instructions, as upon their oaths they are obliged to do. *Downtown Grill, Inc. v. Connell*, 721 So.2d 1113, 1118 (Miss. 1998); ***Parker v. Jones County Community Hosp.***, 549 So.2d 443, 446 (Miss. 1989).

¶42. The Fielders have neither shown to this Court any abuse of discretion by the trial judge, nor any case law supporting their position. In fact, this Court has previously been reluctant to grant a mistrial for misconduct based upon a bailiff's actions absent testimony from jurors regarding misconduct. *See* ***Middleton v. Evers***, 515 So.2d 940 (Miss. 1987). As stated above, the Fielders could not see into the jury room at the time of the alleged derogatory comment to know for sure who said it, and at best, they overheard what they thought was the bailiff's voice. Further, the bailiff specifically denies having said any such statement. Thus, this Court cannot find any prejudice or unfairness justifying a finding of an abuse of discretion by the trial judge. The Fielders' assignment of error is without merit.

## VI. THE TRIAL COURT ERRED IN PERMITTING THE TESTIMONY OF THE DEFENSE'S EXPERT WITNESS.

¶43. The Fielders' final assertion of error is that the trial court improperly permitted the testimony of Dick Turner, MBC's accident reconstruction and investigation expert. The Fielders allege that Dick Turner was not qualified as an expert witness, and alternatively, that "his testimony should not have been permitted in the way and manner it was presented to the Court and Jury."

¶44. The Mississippi Rules of Evidence (MRE) permit expert testimony if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." M.R.E. 702. An individual may be qualified as an expert in a particular field based upon his knowledge, skill, experience, training or education. *Id*. The sufficiency of foundational facts or evidence on which to base an opinion is a question of law. ***Materials Transp. Co. v. Newman***, 656 So.2d 1199, 1203-04 (Miss. 1995); ***Gulf Ins. Co. v. Provine***, 321 So.2d 311, 314 (Miss.1975). These facts must afford a "reasonably accurate basis" for the expert's conclusion. ***Gulf Ins. Co.***, 321 So.2d at 314. Expert testimony must be consistent with scientific principles "as established by the laws of physics or mechanics." *Id*. The scientific principles underlying an expert's opinion must be generally accepted by practitioners in the expert's field. ***May v. State***, 524 So.2d 957, 963 (Miss.1988); M.R.E. 702, Comment.

¶45. Here, MBC submits that Dick Turner was eminently qualified as an accident reconstruction expert. The record reveals that beyond his undergraduate at Syracuse University and police training at the Dallas Sheriff's Academy, Turner testified to specialized training and education at the University of Texas at Austin, the Society of Automatic Engineers for accident reconstruction, and the Institute of Police Technology and Management in Jacksonville, Florida. Turner stated that he had previously been qualified to testify as to accident reconstruction in forty-seven states including Mississippi. Additionally, Turner was a professional race car driver and later test drove vehicles for Ford, Chrysler, GM, Mazda, Honda, Audi, BMW, and Porsche.

¶46. This Court has permitted the testimony of qualified accident reconstruction experts to give opinions on how an accident happened, the point of impact, the angle of travel, the responsibility of the parties involved, and the interpretation of photographs. *Miller v. Stiglet, Inc.*, 523 So.2d 55 (Miss. 1988); *Hollingsworth v. Bovaird Supply Co.*, 465 So.2d 311 (Miss. 1985). However, in *Poirrier v. Degrande*, 604 So.2d 268 (Miss. 1992), this Court found reversible error where the trial court had allowed the expert testimony of Barber, an alleged accident reconstructionist. *Id.* at 270. This Court based its reversal however only on the fact that the expert did not have the training or the experience to qualify pursuant to MRE 702, *Miller* and *Hollingsworth. Id*.

¶47. This Court compared the expert in *Poirrier* to ones in *Miller* and *Hollingsworth*, as follows:

> [B]oth experts in *Miller* and *Hollingsworth* graduated from the Traffic Institute Accident Investigation School of Northwestern University. In *Miller*, the expert witness also had fourteen years experience as a police officer, during twelve of which he worked accidents, investigating between four hundred and six hundred accidents. *Miller*, 523 So.2d at 57. In *Hollingsworth*, the expert witness had vast experience in police department investigating and reconstructing traffic accidents, experience gained at Ford, General Motors and Chrysler Proving Grounds, and in teaching traffic accident reconstruction in approximately thirty-five states. *Hollingsworth*, 465 So.2d at 313. . . . While Barber could qualify as an expert to automobile damage and repair and as to cost of repair, Barber does not meet the qualifications regarding accident reconstruction pursuant to *Miller* and *Hollingsworth*.

604 So.2d at 270.

¶48. Employing a similar comparison in the case *sub judice*, Turner definitely falls into the category of highly educated and trained accident reconstruction experts previously approved in *Miller* and *Hollingsworth*. Thus, the trial court properly exercised sound discretion in allowing the expert testimony of Turner as to accident reconstruction.

## CONCLUSION

¶49. The trial judge properly excluded Moss's subsequent DUI offense and speeding violations which only would have confused and misled the jury, because the Fielders did not show that the subsequent traffic offenses had any bearing on the earlier accident. Therefore, the trial judge's ruling prohibiting the testimony about Moss's subsequent traffic violations was not an abuse of discretion, because such evidence was properly deemed irrelevant to the accident of December 18, 1992.

¶50. Instructions D-23 and D-25 clearly state the law under Section 85-5-7, and would have permitted the jury to return a verdict in favor of Bobbie Fielder in the event it found MBC to be totally at fault, or if it had found MBC and Lanice Fielder both at fault. This Court has held that if the instructions granted adequately instruct the jury, a party may not complain of the refused instruction on appeal to this Court. *Church*, 697 So.2d at 411. Hence, the Fielders' contention of error in failing to grant their jury instruction P-6 is without merit, and the trial court is affirmed.

¶51. Moreover, Miss. R. Civ. P.51(b) states that a court **may** instruct the jury of its own initiative. Thus, the trial court was not in error for failing to amend the Fielder's inaccurate jury instruction P-6.

¶52. It is clear from the order that the trial court relied upon Rule 42(a) and found that the cases should be consolidated to avoid unnecessary costs or delay as both cases involve common questions of law and fact. Applying the liberal standard on consolidation announced in *Vicksburg Chem. Co. v. Thornell*, 355 So.2d 299, 300 (Miss. 1978), the trial judge was easily within the discretion afforded him when he consolidated these two cases which arose from the same accident.

¶53. Read as a whole and in context, instructions D-13 and D-14 fairly announce the law and create no injustice; thus, no reversible error is found.

¶54. This Court cannot find any prejudice or unfairness justifying a finding of an abuse of discretion by the trial judge in refusing to grant a mistrial because the trial court only had unsubstantiated allegations by the Fielders that the bailiff made derogatory comments about their counsel.

¶55. Finally, Dick Turner falls into the category of highly educated and trained accident reconstruction experts previously approved in *Miller* and *Hollingsworth*. Thus, the trial court properly exercised sound discretion in allowing the expert testimony of Turner as to accident reconstruction.

¶56. Therefore, the Fielders' assertions of error are without merit, and the judgment of the Lauderdale County Circuit Court is affirmed.

¶57. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. COBB, J., NOT PARTICIPATING.**

### McRAE, JUSTICE, DISSENTING:

¶58. The defendant made self-serving statements concerning his driver and therefore opened the door for cross examination. Where Moss's driving record after the accident is peppered with numerous driving violations and a DUI, his employer should not have been able to testify that Moss was one of their best drivers without exposing himself to cross-examination on this point.

¶59. The majority cites a criminal case, *Puckett v. State*, 1999 WL 161310 (Miss. March 25, 1999), and says it is harmless error; however we do not have the crystal ball on the appellate level to make that determination. It was error, and the door was opened by the company's representative having injected the character and driving record of its driver.

¶60. Since the majority cites criminal cases above, I note that our criminal cases are replete with instances where the defendant has been held to have opened the door to otherwise inadmissible evidence about his own character. For example, in *Quinn v. State*, 479 So.2d 706, 708 (Miss. 1985), the defendant testified that he was "as pure as the driven snow". This Court held that the state was permitted to impeach the defendant by inquiring into past arrests as well as other bad acts given the defendant's testimony. *See also Pierce v. State*, 401 So.2d 730, 732-33 (Miss.1981) (prosecution was permitted to impeach defendant's claim that he had sold drugs).

¶61. To a large extent, the outcome in this case depended on the credibility of the witnesses. The jury should not have been led to believe, erroneously as it turns out, that Moss was the best driver the company employed. This testimony by Moss's employer was not only self serving, it could only have been false given Moss's driving record. The plaintiffs should have been given an opportunity to impeach Davis's testimony. The trial court's error in not allowing cross-examination on this issue was far from harmless.

¶62. I also dissent to the majority's holding on issues II (the trial court erred in refusing a guest passenger instruction) and III (the trial court erred in consolidating the two cases for trial). The majority admits that Instruction P-6 is a correct statement of the law particularly when combined with Instructions D-23 and D-25. The majority, nonetheless, finds the trial court's denial of the instruction to t he plaintiff was harmless.

¶63. In the typical case involving a two-car accident with injuries to a guest passenger, there will rarely be any negligence attributable to the guest passenger. Where both drivers are alleged to have been negligent, the question of liability to the guest can be a confusing one. The guest should not be penalized because the driver of the car in which he was riding may have been negligent. To a certain extent, Instruction P-6 was an attempt to clarify the confusion that can arise in this situation. A better solution in cases such as this is to have separate trials. The fact that the plaintiff driver may share in the liability for the accident but the guest passenger does not causes a conflict to arise with respect to a single lawyer representing both the plaintiff driver and the passenger. The lawyer defend the plaintiff driver with no negative consequences to the passenger who, by operation of law, cannot be negligent.

¶64. For these reasons, I believe it was error to deny P-6 as well as to consolidate the cases for trial. Accordingly, I respectfully dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. The Fielders did not construct an argument against the consolidation of these two cases under a separate issue heading. However, since they made mention of this argument under issue **II.**, it is discussed here likewise.