KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 61. I disagree with the majority’s finding that the trial court did not abuse its discretion in excluding Donald Raw-son’s expert testimony regarding the lack of skid marks, as they related to causation and avoidance of the accident.[10] In all other respects, I concur with the majority.
*790 ¶ 62. I agree with the majority’s summary of the Daubert standard; however, I disagree with its conclusion that Rawson’s opinion, as it related to the lack of skid marks, was unreliable and inadmissible. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
¶ 63. Mississippi Rule of Evidence 702 provides:
If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
“Rule 702 seeks to encourage the use of expert testimony in non-opinion form when counsel believes the trier [of fact] can draw the requisite inference.” Miss. R. Evid. 702 cmt. Additionally, it is possible for an expert to suggest the inference which should be drawn from applying his specialized knowledge to the facts. Id. Moreover, “[t]his Court has permitted the testimony of qualified accident reconstruction experts to give opinions on how an accident happened, the point of impact, the angle of travel, the responsibility of the parties involved, and the interpretation of photographs.” Fielder v. Magnolia Beverage Co., 757 So.2d 925, 937-38 (Miss.1999) (citing Miller v. Stiglet, Inc., 523 So.2d 55 (Miss.1988); Hollingsworth v. Bovaird Supply Co., 465 So.2d 311 (Miss.1985)).
¶ 64. “It is not necessary that one offering to testify as an expert be infallible or possess the highest degree of skill; it is sufficient if that person possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman.” Hooten v. State, 492 So.2d 948, 948 (Miss.1986) (citing Henry v. State, 484 So.2d 1012 (Miss.1986)). In this case, Rawson had been employed with the Mississippi Highway Safety Patrol since 1968, and, over the course of his employment and training, he had become an expert in the field of accident reconstruction, which had led to his teaching and publishing literature in that field. Clearly, Rawson possessed particular knowledge and information regarding accident reconstruction that laypersons usually do not have.
¶ 65. In his deposition, Rawson concluded that Holmes had been traveling in excess of the posted speed limit and that he had failed to take appropriate evasive action to avoid the accident. Rawson’s report provided an explanation for each of his findings. Specifically, Rawson’s report said that:
1. The Pontiac stopped eastbound on University Ave[.] to initiate a left turn into a private drive. This opinion is based upon my review of the Crash Report filed by the Sheriffs office.
2. As the Pontiac was making a left turn it was struck in the front right side by the front left of the westbound Chevrolet PU. This opinion is based on my observation of the scene and vehicle photos as well as plaintiffs statements.
3. The Area of Impact was located at the north edge of University Ave[.] and the middle of the private drive. This opinion is a result of my observation of a photo depicting a tire scuff in the gravel area.
*791 4. The impact rotated the Pontiac counterclockwise causing a secondary collision of the Pontiac rear right side with the rear left side of the Chevrolet PU. Opinion based on the photos showing the secondary damage.
5. There was no skid marks prior to impact. Opinion is based on the absence of skid marks in the photos.
6. The Pontiac was able to accelerate to the impact in 3.13 seconds before being hit and could have cleared the westbound lane in 3.62 seconds. This opinion was based on timed cars making a left turn at the collision site.
7. The PU was approximately 206 feet from impact with a clear view of the scene when the Pontiac entered his lane. This opinion is based on the Crash Report in which the Chevrolet PU driver estimated his speed at 45 mph, opinion # 6 and my observations at the scene.
8. The speed of the PU was 45 miles per hour on impact. Opinion based on the estimated speed of the PU driver and the absence of skid marks.
9. There is not a method to determine speed of the vehicle’s speed using physical evidence. This opinion is based on the use of conservation of linear momentum normally used in the case to determine speeds, but necessary data is not available because:
a. The site has been altered due to construction in the post impact areas.
b. The secondary collision has some input in speed and direction.
10. Using the posted speed limit of 40 mph, the PU could have reacted to the car turning and applied normal braking and the Pontiac would not create an immediate hazard. This would have allowed the PU to slow to 31 mph and would have allowed the car to clear the lane in the 3.62 seconds required because he would arrive at the area of impact 3.72 seconds after perception. This opinion is a calculated value using the speed limit of 40 mph, the normal braking value and the standard perception-reaction time.
11.From the speed of 40 mph (posted speed limit). The driver could have stopped the PU in 194 feet by reacting and locking his brakes. This is 12 feet prior to impact. This opinion is a calculated value based on the road surface’s coefficient of friction.
(Emphasis in original.)
II66. The majority asserted that “Raw-son failed to connect the dots between the skid marks and the existing physical evidence; thus, as found by the trial judge, his conclusion regarding causation was unreliable.” Maj. Op. at ¶ 54. However, Rawson’s report provided a basis for each of his findings, including specific findings based on the accident report, accident photos, the posted speed limit, Holmes’s admitted speed, the normal braking value, the standard perception-reaction time, the road surface’s coefficient of friction, and his personal observations of the scene.
¶ 67. I agree with the majority’s assertion that “Nothing in Daubert requires a court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered,” Maj. Op. at ¶ 53 (quoting Watts v. Radiator Specialty Co., 990 So.2d 143, 149 (Miss.2008)). However, as evidenced by Rawson’s report, there was sufficient evidence in the record to “connect the dots” of Rawson’s opinion regarding the lack of skid marks, making his expert opinion reliable and admissible.
*792 ¶ 68. Moreover, Rawson’s report was dated June 11, 2006, and his trial deposition was taken on July 3, 2006. Prior to the deposition, Holmes was on notice of Rawson’s opinions and their bases. As such, Holmes could have challenged Raw-son’s opinions by conducting a vigorous examination of Rawson, and he could have presented contrary evidence through an expert witness of his own. See Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 36 (Miss.2003) (quoting Daubert, 509 U.S. at 595-96, 113 S.Ct. 2786) (“Vigorous cross examination, presentations of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.”).
¶ 69. However, Holmes did not attempt to challenge the bases of Rawson’s opinions until his ore tenus Daubert motion on the first day of trial, June 25, 2008, nearly two years after Rawson’s deposition had been taken. While the trial judge acted within his discretion in allowing the motion to be heard, one has to wonder why Holmes waited until trial to object to expert testimony of which he had known the bases for more than two years. See Hyundai Motor America v. Applewhite, 53 So.3d 749, 755 (Miss.2011) (“[T]he trial judge has discretion with regard to when and how to decide whether an expert’s testimony is sufficiently reliable to be heard by a jury-”).
¶ 70. Because Rawson is an educated and experienced accident reconstructionist who possessed peculiar knowledge within his field not likely to be possessed by a layman, and his opinions were not merely subjective belief or unsupported speculation but were based on methods and procedures of science, the trial court abused its discretion in excluding Rawson’s deposition in its entirety. Hooten v. State, 492 So.2d at 948; McLemore, 863 So.2d at 36. Accordingly, I would affirm the Court of Appeals’s reversal and remand of this issue for a new trial with the inclusion of all of Rawson’s expert testimony.
DICKINSON, P.J., AND RANDOLPH, J., JOIN THIS OPINION.

. Rawson’s qualifications as an expert in accident reconstruction have not been chai- *790 lenged.